# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LOUIS KWAME FOSU, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: |
| | : | <u>Jury Trial Demanded</u> |
| THE UNIVERSITY OF RHODE | : | |
| ISLAND, UNIVERSITY OF | : | |
| RHODE ISLAND BOARD OF | : | <u>COMPLAINT FOR</u> |
| TRUSTEES, DAVID M. DOOLEY, | : | <u>MONEY DAMAGES,</u> |
| PRESIDENT, THE UNIVERSITY | : | <u>DECLARATORY</u> |
| OF RHODE ISLAND, DONALD | : | <u>AND INJUNCTIVE</u> |
| DEHAYES, PROVOST AND VICE | : | <u>RELIEF</u> |
| PRESIDENT FOR ACADEMIC | : | |
| AFFAIRS, AND JEANNETTE E. | : | |
| RILEY, DEAN, COLLEGE OF | : | |
| ARTS & SCIENCES, in their | : | |
| individual and official capacities, | : | |
|     Defendants. | : | |

## COMPLAINT

Plaintiff Louis Kwame Fosu ("Plaintiff" or "Professor Fosu"), by and through his undersigned counsel, files the following Complaint against Defendants seeking declaratory and injunctive relief and money damages as well as attorneys' fees, litigation expenses and other equitable relief, and in support thereof alleges the following:

## INTRODUCTION

1. Plaintiff was a member of the faculty at Defendant University of Rhode Island (hereinafter "Defendant" or "URI").

2.  URI first recruited Plaintiff to be a Visiting Professor with URI's Honors Program in Spring of 2019, and later, based on his excellent performance, asked him to teach additional classes, and to join the Political Science Department Faculty of Practice.

3.  For purposes of this Complaint, and a separate and important fact that explains Defendants' racially motivated violations of law, it is important to note that Plaintiff is a black man.

4.  Plaintiff joined URI's faculty based on URI's claimed commitment to educational excellence, and importantly, diversity and inclusion.  URI's website trumpets its commitment to diversity and inclusion as follows:

> To cultivating an academic, working, and living environment that promotes excellence. We believe that we have much to learn from one another and we are dedicated to providing the means to making that happen through policy-making, programming, critical conversations, thoughtful action, and collaboration between administration, faculty, staff and students.
>
> Community, Equity and Diversity (CED) is here to support you and to connect you with the people and resources to be successful at URI.
>
> We're glad you're here. (Available here: PDF of URI)

5.  Plaintiff took URI at its word, and its support for diversity and inclusion.  At first, Plaintiff was glad he was at URI.  As recounted herein, and as the facts demonstrate, Plaintiff was seriously wrong about his assessment of URI's commitment to diversity and inclusion.

6.  URI has no commitment to diversity – present or past – and continues to cling to systemic racially discriminatory practices.

7.  When challenged on its discriminatory record, URI, as an institution, and the individual Defendants, collectively and separately, carried out a vicious and aggressive campaign to destroy Plaintiff, attacked his reputation and drove him out of URI by concocting false allegations of misconduct and launching baseless and pretextual investigations of Plaintiff.

8. URI's record on racial diversity is abysmal. In this era of racial awareness, URI stands apart as an institution with little diversity in its faculty, administration, staff and students. In fact, beyond mere puffery, URI has no culture of diversity or inclusion.

9. The facts tell the story. According to recent data, URI's faculty has a mere 3 percent of black representation, and its student body consists of less than 5 percent black students. In comparison, Rhode Island College has more than double the number of black students at 10 percent.

10. Compounding this blatant discriminatory environment, is the basic fact that URI's leadership has no diverse representation. Indeed, after a recent search for a new President, URI selected another in a long line of white, male leaders, rejecting accomplished and diverse candidates.

11. It was against this context, and unknowingly in this type of community, that Plaintiff joined URI's Department of Political Science.

12. URI describes Plaintiff as "a policy expert," who "earned a Juris Doctorate from Georgetown University Law Center," along with an M.B.A. and a B.A. from other respected academic institutions; who has "served as a special advisor" to U.S. and foreign governments and as a Legislative Fellow to a U.S. Congressman (available here: PDF of URI Website).

13. Remarkably, URI hired Professor Fosu to teach, among other things, a class on advocacy in institutions titled, "Topics in Political Science: Examining Institutional Power, Checks & Balances, and Advocacy for a More Equitable Society." Yet when Professor Fosu taught his students how to advocate for equality at URI and encouraged his students to examine the institutional processes at URI, Defendants quickly reacted to silence Plaintiff, punished him

3

for doing his job and immediately sought his removal based on trumped up charges of alleged misconduct.

14. Rather than embracing its commitment to "critical conversations, thoughtful action, and collaboration between administration, faculty, staff and students," Defendants circled the wagons and took immediate actions to intimidate and punish Professor Fosu by placing him on administrative leave, cancelling all his classes and finally terminating his employment. Plaintiff had dared to challenge URI and hold it accountable for its discriminatory record.

15. When Plaintiff voiced his opinions about the undeniable and appalling lack of diversity in the faculty and administration at URI and criticized URI's hypocrisy and pattern and practice of unlawful race discrimination in the hiring, treatment, and promotion of African Americans, Defendants retaliated against him hoping to silence his criticism.

16. Defendants unlawfully restrained Professor Fosu's free speech and terminated his employment, putting his professional career in jeopardy and damaging his reputation.

17. This action seeks to vindicate Plaintiff's First Amendment and other civil rights and to hold Defendants accountable for their misdeeds, which speak far louder than their hollow words of purportedly embracing diversity.

## NATURE OF THE ACTION

18.  Plaintiff is a professor who has been employed by URI from 2019 through June 2021.

19. Upon his arrival at URI in early 2019, Professor Fosu was surprised by the lack of diversity in the faculty and administration at URI and did his best to improve diversity efforts at the school.

20. When his students observed inequities at URI and in the community at large, Professor Fosu helped create a forum to discuss issues such as systemic racism and discriminatory hiring

4

practices. Professor Fosu worked with students and faculty to bring sensitive but deeply important racial issues to the attention of URI officials.

21. Instead of meeting with the students and Professor Fosu to discuss URI's practices, Defendants ignored and hid from the requests, attempting instead to shield themselves by silencing Plaintiff. URI smeared the contents of Professor Fosu's advocacy work and without notice or reason, removed Professor Fosu's classes from the course catalog and put him on administrative leave.

22. URI then began an internal investigation to concoct a reason to pretextually terminate Professor Fosu for something other than suppression of his free speech and race discrimination.  The investigation resulted in the issuance of a vague report that cites behaviors and actions that violated URI policies but does not attempt to link these policies to the alleged misconduct in any meaningful way.  More importantly, the report explicitly sidesteps the constitutional rights and violations of federal law central to this lawsuit.

23. By retaliating against Professor Fosu for exercising his constitutionally protected rights, Defendants violated his First Amendment right to free speech, deprived him of due process and equal protection of law under the Fourteenth Amendment, actionable pursuant to 42 U.S.C. §1983, and violated his free speech and due process rights under Article 1, §§2 and 21 of the Rhode Island Constitution.

24. This lawsuit seeks to halt Defendants' retaliation against Professor Fosu and to reinstate him to his position, directing Defendants to implement all necessary measures to ensure these retaliatory practices are not continued.

25. Plaintiff also seeks, individually, compensatory damages commensurate with his injuries and punitive damages as legally permissible in an amount to be determined at trial, as well as the attorneys' fees, costs and expenses related to this action.

26. On April 28, 2021, Plaintiff filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC") asserting that Defendants have violated, and continue to violate, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Plaintiff intends to seek leave of the Court to amend this Complaint to add a cause of action against Defendants under Title VII based on the same operative facts and evidence supporting the claims in this Complaint after Plaintiff has exhausted the required administrative remedies.

27. Plaintiff could wait no longer to file, however, and files this Complaint at this time in an effort to halt Defendants' ongoing retaliation, intimidation and violations of federal law. See, e.g., Sughrim v. New York, No. 19-CV-7977 (RA), 36 (S.D.N.Y. Nov. 30, 2020), citing Woods v. Dunlop Tire Corp., 972 F.2d 36, 41 (2d Cir. 1992) (plaintiff "may file suit on the non-Title VII claims and then amend the complaint to include the Title VII claim after receiving a right-to-sue letter").

28. Among other things, Plaintiff is receiving (as recently as April 21, 2021) threatening and harassing email communications related to this action that he has reported to the FBI and that he hopes will cease once this Complaint is filed.

## **JURISDICTION**

29. This Court has jurisdiction under 28 U.S.C. § 1331, 1343, 2201, 2202 and 42 U.S.C. §1983.

30. The Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

31. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

## VENUE

32. Venue is proper in this Court under 28 U.S.C. § 1391 since all the Defendants reside or may be found in the State of Rhode Island and because the events giving rise to Plaintiff's claims took place within this District.

## PARTIES

33. Plaintiff is a resident of the State of Rhode Island whose employment was terminated by URI.

34. Defendant, URI is a public entity that exists as a division of the administrative government of the State of Rhode Island with its principal place of business being in the State of Rhode Island. Its principal campus is in Kingston, Rhode Island. As a public university, URI is mandated to comply with the First and Fourteenth Amendments to the U.S. Constitution.

35. Defendant, Board of Trustees of the University of Rhode Island is a public corporation established for the management of URI, including in the capacity to sue, and the capacity to be sued for the relief requested herein.

36. Defendant David M. Dooley is President of URI and is sued in his official and individual capacities based on his personal involvement in conduct that clearly violated Plaintiff's rights under the First Amendment to the Constitution, which were clearly established at the time of his actions. Any objectively reasonable official would have believed that Mr. Dooley's actions violated Plaintiff's clearly established Constitutional rights.

7

37. Defendant Donald DeHayes is Provost and Vice President for Academic Affairs at URI and is sued in his official and individual capacities based on his personal involvement in conduct that clearly violated Plaintiff's rights under the First Amendment to the Constitution, which were clearly established at the time of his actions. Any objectively reasonable official would have believed that Mr. DeHayes' actions violated Plaintiff's clearly established Constitutional rights.

38. Defendant Jeannette E. Riley is Dean of the College of Arts & Sciences and is sued in her official and individual capacities based on her personal involvement in conduct that clearly violated Plaintiff's rights under the Fourteenth Amendment to the Constitution, which were clearly established at the time of her actions. Any objectively reasonable official would have believed that Ms. Riley's actions violated Plaintiff's clearly established Constitutional rights.

39. At all relevant times, Defendants Dooley, DeHayes and Riley were servants, agents and/or employees of URI, who were responsible for enforcing the acts, policies, practices, and/or customs of URI, including the restriction on Plaintiff's speech set forth in this Complaint. The individual Defendants were acting under color of state law when they took action to violate Plaintiffs' federal and state constitutional rights: Each of them deprived Plaintiff of his constitutional rights, which were clearly established at the time of their actions, and any objectively reasonable official would have believed that the actions taken violated Plaintiff's clearly established First Amendment rights to freedom of expression. In short, the individual Defendants have neither excuse nor immunity for violating Professor Fosu's Constitutional rights.

40. The individual Defendants' acts were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

**FACTS**

41. Professor Fosu is a policy expert and an advocate for women and minorities, who has devoted over two decades of his career to fighting for fair and equal treatment of marginalized groups in society.

42. Professor Fosu obtained his law degree from the Georgetown University Law Center in 2002. Before that, he received an M.B.A. from Pace University and a B.A. from John Jay College of Criminal Justice, CUNY.

43. Professor Fosu has received consistently positive performance reviews and accolades from peers and supervisors throughout his career.

44. URI first hired Plaintiff as a Visiting Assistant Professor in the Honors Department. See Offer Letter from URI, November 20, 2018, Exhibit 1. Plaintiff taught courses on leadership and political advocacy, and he assisted and encouraged his students in their advocacy pursuits.

45. For example, in 2018, his students developed the website, "Love Social Change." The website detailed various student-led campaigns on issues ranging from Improving Mental Health for URI Students to "Lead Poisoning: Advocacy for Rhode Island Schools."

46. In July 2019, based on his excellent performance during his first year of teaching at URI, URI invited Plaintiff to join the Political Science Department, in a Faculty of Practice appointment, in addition to its Honors Program. See Offer Letter from URI, July 1, 2019, Exhibit 2. The appointment runs through 2024-2025 and is contingent on an "annual evaluation/review of teaching and student advising performance." See id.

## **Professor Fosu's Efforts to Exercise His First Amendment Rights**

47. Starting in the Fall of 2020, Professor Fosu taught a class based on advocacy in institutions titled, "*Topics in Political Science: Examining Institutional Power, Checks & Balances, and Advocacy for a More Equitable Society.*"

48. In this class, Professor Fosu educated students on aspects of advocacy campaigns and encouraged them to implement such campaigns. He also encouraged students to speak their mind, which students found empowering. Students were comfortable stating their opinions in the class, as it helped facilitate important discussions among opposing viewpoints.

49. Professor Fosu encouraged students to apply the teachings of the course to their everyday lives, as issues and conflicts they experienced at school were microcosms of those in the community at large.

50. In his course, Professor Fosu found that many of the students wanted to change and improve certain practices at URI. For example, students spotted issues and created presentations on issues ranging from "Increasing Diversity in Greek Life and Campus Community" to "Lack of Diversity in the Criminal Justice Department." In the criminal justice presentation, students noted that "[t]here are no Latino, African American, Asian or other racial groups represented within the faculty in this department."

51. Because Professor Fosu values diversity, tolerance, and growth, he supported his students in creating a forum that would embody and clarify their concerns. The forum would have a broad umbrella mission and purpose to enact policy change not just at URI, but in the community at large. Professor Fosu worked tirelessly with his students to design and

10

create the forum based on student feedback. This forum became known as the Diversity

Think Tank ("DTT").

52. On September 8th, 2020, the DTT was officially incorporated as a non-profit institution,

and on October 13, 2020, the DTT went live online with a broad mandate. One vision of

the DTT was:

> Creating dignified, diverse, enlightened, equitable and loving environments in
> academic institutions for African-Americans, Latinos and other marginalized
> people, by systematically identifying and ending organizational culture and
> policies that detriment racial equity, reinforce structural racism and condone
> metastasized racism in academic institutions.

53. Once formed, the DTT expanded to include faculty members and staff, in addition to

students. Both students and faculty participated in the DTT and, ultimately, as part of the

mission of the DTT, they collaborated to produce a document that clearly and succinctly

listed their grievances and recommendations.

54. The document titled the Declaration of Diversity ("DOD") was published online on

October 24th, 2020.

55. In the DOD, the authors were clear about their views and opinions on systemic racism,

lack of diversity and racial inequities at URI.

56. Professor Fosu sent the DOD to senior administration officials at URI, including

Defendant Dooley, and to the URI Board of Trustees on October 26th, 2020. Professor

Fosu also freely shared his opinions and criticisms about URI's systemic race

discrimination in the hiring, treatment and promotion of African Americans.

**URI's Retaliation and Professor Fosu's Sudden Removal and Dismissal**

57. The morning after Professor Fosu sent the letter to Defendant Dooley and other senior

officials at URI, on October 27th, 2020, Defendant Riley emailed Professor Fosu about an

alleged student complaint the Provost's office had received regarding his class. Dr. Riley stated that the complaint was in regard to Professor Fosu cancelling class and concern over "the nature of [Fosu's] email communications with the class."

58. When Professor Fosu tried to set up a meeting to understand the nature of the complaint, Defendant Riley responded, "There is no need to meet at this time."

59. The alleged student complaint was the only complaint that was ever brought to the attention of Professor Fosu during his time at URI.

60. In fact, Professor Fosu had consistently received positive student reviews during his tenure.

61. Professor Fosu had received positive reviews from his immediate supervisor as well, chair of the Political Science department, Professor Marc Hutchison, who observed Professor Fosu's classes and evaluated his performance.

62. On November 13, 2020, for example, Professor Hutchison wrote about Professor Fosu's performance:

> Louis is able to generate consistent student engagement through his teaching style. He brings a high energy lecture style to the classroom and effectively mixes in humor. Louis did take attendance and the class was well-attended. And, despite the masks, he knew each student by name. Louis clearly has passion for the subject and his desire for thoughtful class discussion and the students were often able to feed off of his energy. His teaching was very effective in facilitating critical thinking, identifying the key legal concepts and casework, and connecting the relevance of those cases to the students' everyday life.

63. Professor Fosu was shocked and surprised that he had received an alleged student complaint, and that this complaint coincidentally came immediately after transmission of the DOD to URI officials.

64. Not intimidated by the veiled threat, Professor Fosu remained vocal about his intentions to advocate for change at URI and beyond, frequently discussing the matter with his peers, including members of the Political Science department.

65. Professor Fosu continued to communicate his advocacy efforts to his immediate supervisor Professor Hutchison, who supported Professor Fosu's efforts and never brought up any complaints about his advocacy or approach. To the contrary, Professor Hutchison praised Professor Fosu on his advocacy efforts and conveyed that he had visited the DTT website, had read the corresponding documents, and supported Professor Fosu's efforts.

66. On November 11, 2020, Professor Fosu emailed Professor Hutchison to let him know that he was making appointments internally and externally to advance the DTT advocacy.

67. On December 6, 2020, Professor Fosu emailed Defendant DeHayes politely requesting that Defendant DeHayes meet with Professor Fosu's students so that the students could practice their advocacy efforts, i.e., present their recommendations from the DOD to senior officials of the institution and argue for reform.

68. The following day Defendant DeHayes, along with Defendant Dooley, sent a threatening email responding to Professor Fosu's request stating:

> Normally we would be pleased to meet with any class to learn directly from students about the details of their class projects. In this case, however, it is clear that the document that you refer to as the Declaration of Diversity was written by you and represents your opinions being imposed on students and others…we are not willing to participate in this exercise, which appears to be designed primarily to support your platform rather than student learning.

69. Defendant DeHayes copied URI's General Counsel (who retired the next day) and at least four other people on that email.

70. On January 12, 2021, when faculty and students were on break between semesters, Defendant DeHayes e-mailed Professor Fosu a letter indicating he had been placed on administrative leave, restraining him from participating in any further "teaching, mentoring, departmental and other activities." The letter claimed that Defendant DeHayes reached out

"multiple times" the day before, again when the campus was closed, but there was no notice given to Professor Fosu that such an abrupt and harsh action was coming.

71. The letter mentioned alleged "serious concerns" and various alleged "complaints, allegations, reports," but no written evidence was presented to Professor Fosu to verify whether these complaints, allegations or reports were real, or credible, and whether they warranted suspension of his classes and placing him on administrative leave.

72. Professor Fosu was not afforded any opportunity to refute the allegations and was stripped of any procedural protections he was guaranteed under URI's policies, practices, and procedures and by law.

73. The punishment of placing Professor Fosu on administrative leave was extraordinary and unprecedented at URI.  Professors who have been accused of actual serious misconduct have not been placed on administrative leave.   Neither have professors that have made provocative public remarks on issues of gender and sexuality.

74. URI's "University Manual" is written in a manner to evade consistent disciplinary action and evinces no clear guidance on Professor Fosu's due process rights.  For example, navigating to the University Manual online, the Manual cites to an Appendix containing "University Policies" but the 3 most important policies are nowhere to be found: "Grievance Procedures #83-15", "Discrimination Complaint Process #85-1" and "Dismissal and Suspension of classified employees #83-21."  Even clicking on URI's sexual harassment policy leads to an error message "Page Not Found" which is astonishing as victims of sexual harassment and discrimination seemingly have no clear and transparent intake channel to ensure due process (available here: PDF of URI Website).

75. Defendants' actions of placing Professor Fosu on administrative leave without due process came as a surprise to students, faculty, and external observers.

76. Mysteriously, at or about this same time, several faculty and students suddenly began disassociating themselves from the DTT and its advocacy efforts.

77. Defendant DeHayes' January 12, 2021, letter accused Professor Fosu of "coercion, exploitation, and intimidation relating to student expression," which Professor Fosu found shocking and upsetting, as he had never intimidated students and has always wholeheartedly embraced students' free expression and exchange of ideas. The letter went on to explicitly demean and discredit Professor Fosu as "hostile, disrespectful and/or non collegial as well as disruptive."

78. On January 22, 2021, Defendant DeHayes sent a memorandum to Jay Walsh (the URI teachers' union representative), copying two other URI officials, in which Defendant DeHayes spread false accusations about Professor Fosu intimidating and pressuring students. The memorandum explicitly acknowledges that URI **received no "written complaints** *per se* **concerning Mr. Fosu**" but then goes on to attack Professor Fosu under the guise of alleged complaints made by unknown students, accusing him of intimidation, "retribution," yelling, and using "misogynistic" language. The memorandum falsely labels Professor Fosu as "misogynistic and abusive" and alleges he "pressured or manipulated" students. Nothing is further from the truth.

79. On April 16, 2021, Professor Fosu received another letter from Defendant DeHayes in which Defendant DeHayes posits more "complaints and reports of concern" from students and employees since the time Professor Fosu was placed on administrative leave. Defendant

DeHayes' states he will personally appoint an outside investigator to investigate all the alleged complaints.

80. In other words, more than three months *after* placing Professor Fosu on administrative leave, Defendant DeHayes ordered an investigation that was predetermined and pretextual, with the aim of providing cover to his retaliatory action and to ostensibly help make his "final decision" about Professor Fosu's employment.

81. The predetermined decision was carried out in a May 11, 2021, letter from Defendant DeHayes to Professor Fosu, informing Professor Fosu that URI was eliminating his position and attaching a copy of the final investigation report.  In the letter, Defendant DeHayes, copying four other University officials, once again falsely accused Professor Fosu of "coercion, intimidation, and retaliation toward students" and "hostility, harassment, and disrespectful and threatening behavior toward colleagues."

82. The investigation report referenced by Defendant DeHayes alleges the violation of vague principles and policies by Professor Fosu in his use of URI's IT resources and services and lists previously undisclosed complaints and concerns made by faculty and staff, some anonymous, with regards to Professor Fosu's advocacy efforts.

83. For example, the report cites to an unidentified source who claims that Professor Fosu frequently entered her office and made inappropriate, but "not aggressive," comments about her skin and hair.  The complaint itself is muddled and confusing.  It never appeared in the correspondence from URI to Professor Fosu and it most certainly was never advanced by URI as a reason for its adverse actions.

84. Ironically, on the same day that URI terminated Professor Fosu's employment, May 11, 2021, URI launched "Anti-Black Racism," an initiative designed to advance an anti-racism

agenda as a result of "recent dialogue" at the university. URI goes on to pledge to hire four new "diversity" coordinators and a cluster of diverse faculty hires in the College of Arts and Sciences.  So, on the one hand, URI sought to intimidate and retaliate against students and faculty that were aligned with the DOD initiative and on the other hand, URI has set in motion a plan to adopt, at least on paper, the core principles of the DOD in a manner that is controlled and pleasing to URI officials.

85. The only matter Professor Fosu can be accused of is speaking boldly and truthfully about systemic racism and diversity and inclusion.  He expressed his views and refused to disavow his beliefs. In return, URI and the individual Defendants punished him and tried to silence him.

### Effects of Defendants' Unconstitutional Actions on Professor Fosu

86. Defendants' retaliatory actions against Professor Fosu have caused him substantial harm in several ways.

87. Plaintiff's employment has been terminated posing devasting consequences for his career and professional reputation.   Professor Fosu has a strong record as a Political Science Professor and academic. Because of Defendants' actions, prospective employers will view Professor Fosu less favorably.

88. Professor Fosu cannot rely on URI to give him a favorable recommendation, and URI's decision to fire him reflects poorly on his ability as a professor. This makes it more difficult, if not impossible for Professor Fosu to obtain gainful employment in his profession and craft.

<u>**COUNT I**</u>
**Violation of Plaintiff's First Amendment Right to Freedom of Speech -**
**Retaliation**
**(<u>42 U.S.C. § 1983</u>)**
**(Against all Defendants)**

89. Plaintiff hereby incorporates all paragraphs above as if set forth herein.

90. At all material times, Professor Fosu was engaged in constitutionally protected activity, exercising his clearly established First Amendment right to advocate for diversity, justice, and inclusion at URI.

91. Defendants placed Plaintiff on administrative leave and subsequently terminated his employment because he sought to discuss and offer input, opinions and proposals on race, diversity, and inclusion.

92. Defendants, and each of them, violated and are continuing to violate Plaintiff's First Amendment Rights by retaliating against him, past and present, for protected speech involving matters of public concern.

93. Defendants retaliatory and unconstitutional actions taken against Professor Fosu constitute adverse employment actions.

94. Professor Fosu's interest, as a professor at a public university, in discussing matters of public concern, directed at certain school policies, offered in the context of teaching and scholarship, outweighs Defendants' interest in the efficient provision of services.

95. Any basis provided by Defendants that they placed Plaintiff on administrative leave and terminated him for anything other than his speech and as an advocate for African Americans – his protected class – is pretextual.

96. Defendants' adverse actions injured Plaintiff and his reputation, and Defendants' continuing actions threaten to restrain and prevent Plaintiff's lawful speech in a way likely to chill an ordinary person from future lawful speech.

**COUNT II**
**Violation of Plaintiff's Fourteenth Amendment Right to**
**Procedural Due Process of Law**
**(42 U.S.C. § 1983)**
**(Against all Defendants)**

97. Plaintiff hereby incorporates all paragraphs above as if set forth herein.

98. Professor Fosu's speech is protected by the First Amendment and involved matters of public concern regarding the policies and practices at a public university.

99. Plaintiff's protected speech was a substantial or motivating factor in Defendants' decision to place him on administrative leave and terminate his employment.

100. Defendants retaliatory and unconstitutional actions taken against Professor Fosu constitute adverse employment actions that have deprived Plaintiff of a protected property interest.  Plaintiff's contract implies that so long as he receives favorable annual reviews, which he did, his contract would be renewed.

101. Procedural due process requires, before a public-university professor like Professor Fosu can be terminated, that he be given notice and an opportunity for a hearing before an impartial tribunal.

102. Defendants' adverse employment action against Professor Fosu punished him for engaging in constitutionally protected expression in violation of Professor Fosu's right to due process of law under the Fourteenth Amendment.

103. Defendants' actions violate the First and Fourteenth Amendments via 42 U.S.C. § 1983.

104. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

105. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct aimed at chilling Plaintiff and others like him from engaging in free speech that displeases Defendants.

## COUNT III
### Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection
### (42 U.S.C. § 1983)
### (Against all Defendants)

106. Plaintiff hereby incorporates all paragraphs above as if set forth herein.

107. By reason of the aforementioned speech restriction, Defendants have unconstitutionally deprived Plaintiff of the equal protection of the law guaranteed under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, in that Defendants are preventing Plaintiff from expressing a message based on its content and viewpoint, thereby denying the use of a forum to those whose views Defendants find unacceptable.

108. By punishing Plaintiff without a hearing and discipling him differently and more harshly than similarly situated professors at URI, Defendants have deprived Plaintiff his legitimate claim of entitlement to procedures of fundamental fairness.

109. As a direct and proximate result of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, deprivation of his ability to teach and harm to his reputation, entitling Plaintiff to declaratory and injunctive relief and damages.

20

## COUNT IV
### Violations of Article 1 of the Rhode Island Constitution
### (Article 1, Sections 2 and 21)
### (Against all Defendants)

110. Plaintiff hereby incorporates all paragraphs above as if set forth herein.

111. The actions of Defendants in retaliating against Professor Fosu for expressing his views on diversity and inclusion by placing him on administrative leave and terminating his employment without due process violated his rights under Article 1, Sections 2 and 21 of the Rhode Island Constitution.

112. Article I, Section 21 of the Rhode Island Constitution states, "The citizens have a right in a peaceable manner to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or for other purposes, by petition, address, or remonstrance. No law abridging the freedom of speech shall be enacted."

113. Article 1, Section 2 of the Rhode Island Constitution states, "No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the state."

114. The actions of Defendants in retaliating against Professor Fosu for expressing his views on diversity and inclusion by placing him on administrative leave and terminating his employment without due process violated his rights under Article 1, Sections 2 and 21 of the Rhode Island Constitution.

## COUNT V
### Defamation
### (As to Defendants Dooley and DeHayes)

115. Plaintiff hereby incorporates all paragraphs above as if set forth herein.

116. The actions of Defendants DeHayes and Dooley, including but not limited to those described herein, in Defendant DeHayes' January 12, 2021 letter and in Defendant DeHayes' January 22, 2021 memorandum, constitute defamation insofar as the statements made by Defendants that Plaintiff was responsible for "coercion, exploitation, and intimidation" and that Plaintiff's behavior was "hostile, disrespectful and/or non collegial as well as disruptive" and which resulted in his discipline were false and malicious, not privileged, imputed conduct which injuriously affected the Plaintiff's reputation, and charged the Plaintiff with improper conduct, lack of skill, or integrity in his profession.

117. Upon information and belief, Defendants have made other false and defamatory statements against Plaintiff that will be revealed through discovery in this action.

118. Through their publications of these statements, Defendants intended to and did cause injury to the Plaintiff's profession, causing him to suffer damages in an amount to be proven at trial.

## COUNT VI
### Breach of Contract
### (Against Defendant URI)

119. Plaintiff hereby incorporates by all paragraphs above as if set forth herein.

120. The written agreement between Defendant URI and Professor Fosu provided specifically for reappointments through 2024-25 based on a favorable annual evaluation, yet Defendant

URI terminated Professor Fosu without cause just 2 months after he received a strong and favorable evaluation.

121. URI's breach of Professor Fosu's employment agreement has caused him harm in an amount to be proven at trial.

## COUNT VII
### Rhode Island Whistleblowers' Protection Act RIGL § 28-50-4
### (Against all Defendants)

122. Plaintiff hereby incorporates by all paragraphs above as if set forth herein.

123. Defendants violated the Rhode Island Whistleblowers' Protection Act with respect to Plaintiff by subjecting him to adverse work actions in retaliation for his protected activities. As a result, Professor Fosu has suffered and continues to suffer harm.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks all remedies available pursuant to 42 U.S.C. § 1983, the Rhode Island Constitution, the Rhode Island Whistleblowers' Protection Act and to remedy Defendants' state law defamation and breach of contract claims including:

A. A declaratory judgment that Defendants violated the First and Fourteenth Amendments of the U.S. Constitution because Professor Fosu engaged in protected speech;

B. A preliminary and permanent injunction ordering Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf:

1. To cease their retaliatory conduct and

2. To restore Professor Fosu to his position as Professor in URI's Political Science Department;

C. Nominal, compensatory, and punitive monetary damages, plus interest;

D.      Professor Fosu's reasonable attorneys' fees, expenses, costs, and other disbursements in

this action under 42 U.S.C. § 1988; and

E.      All other further legal and equitable relief to which Professor Fosu may be entitled.

Plaintiff,
By his Attorneys

/s/ Jessica Sanderson

_____

Jessica Sanderson
The Volkov Law Group, LLC
2200 Pennsylvania Ave, NW
Washington, DC 20037
(240) 505-1992
janderson@volkovlaw.com
*Pending Pro Hac Vice Admission*

/s/ Carly Beauvais Iafrate

_____

Carly Beauvais Iafrate, #6343
Law Office of Carly B. Iafrate, PC
38 N. Court Street
Providence, RI 02903
(401) 421-0065
(401) 421-0964 (fax)
ciafrate@verizon.net

## **CERTIFICATION**

The undersigned hereby certifies that this document has been filed electronically on this 2nd day of July 2021 and is available for viewing and downloading to the ECF registered counsel of record.

/s/ Carly Beauvais Iafrate

_____