## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **LOUIS KWAME FOSU,** <br>         **Plaintiff,** <br>   **V.** <br> **THE UNIVERSITY OF RHODE ISLAND, UNIVERSITY OF RHODE ISLAND BOARD OF TRUSTEES, DAVID M. DOOLEY, PRESIDENT, THE UNIVERSITY OF RHODE ISLAND, DONALD DEHAYES, PROVOST AND VICE PRESIDENT FOR ACADEMIC AFFAIRS, AND JEANNETTE E. RILEY, DEAN, COLLEGE OF ARTS & SCIENCES, in their individual and official capacities,** <br>         **Defendants.** | **C.A. No. 21-cv-279-JJM-PAS** |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS II-VII OF PLAINTIFF'S COMPLAINT

Defendants, the University of Rhode Island ("URI" or the "University"); University of Rhode Island Board of Trustees; David M. Dooley, URI's former President ("President Dooley");[1] Donald DeHayes, Provost and Vice President for Academic Affairs ("Provost DeHayes"); and Jeannette Riley, Dean of the College of Arts & Sciences ("Dean Riley") (collectively "URI Defendants"), submit this memorandum stating the legal justifications for the dismissal of counts ii-vii in Plaintiff Louis Kwame Fosu's complaint.[2]

---

[1]    David M. Dooley recently retired as President of URI, with his final date of service occurring on July 31, 2021. URI's current President is Marc B. Parlange.

[2]    President Dooley, Provost DeHayes, and Dean Riley are named as defendants in their individual and official capacities. The official capacity claims should be treated as claims against URI. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

## I.      INTRODUCTION

URI has fully vested its people and resources to promote diversity initiatives, achieving considerable progress with many ongoing programs and developing others to be implemented. URI recognizes that an increasingly diverse university is an always evolving and dynamic endeavor and that there is still much work to be done in its community and in our society.  URI's Academic Strategic Plan (2016-21) articulates its commitment to embrace diversity and social justice through the following goal:

> Inspire an enlightened community that is characterized by vibrant cultural diversity; that embraces difference; that is built upon a learning environment that fosters respect, understanding and social justice; and that rejects prejudice and intolerance.[3]

In this litigation, URI's fulfilment of this commitment is being challenged by a former faculty member, who repeatedly contravened the ideals of respectful and interactive dialogue through his often hostile and coercive treatment of members of the URI community.  Plaintiff's repeated violations of several URI policies and community standards are the reasons why he is no longer employed at the University.

The URI Defendants did not violate any of Plaintiff's First Amendment rights.  Because of the highly slanted and very selective manner in which Plaintiff has pled his factual allegations (which must be accepted as true at this point in the litigation), the URI Defendants are not moving to dismiss the first count of Plaintiff's complaint.  At the summary judgment stage when the actual record will speak for itself, the URI Defendants will present the many undisputed facts evidencing that Plaintiff's first count fails as a matter of law.

---

[3]      https://web.uri.edu/academic-planning/files/academic_plan_handbook.pdf

The URI Defendants' motion to dismiss addresses Plaintiff's remaining six counts, which suffer from clear pleading failures and legal deficiencies (even accepting the truth of the allegations), as summarized below and addressed in detail herein:

- Plaintiff's federal due process claim is implausible because he did not have a constitutionally protected property right to continued employment at URI beyond the 2020-21 academic year.

- Plaintiff's federal equal protection claim is implausible because he does not identify any protected status, nor does he adequately specify details about alleged comparators.  In this thinly pled claim, Plaintiff seems to be relying on a "class of one" theory, which the United States Supreme Court has held is inapplicable to a claim relating to public employment.

- Plaintiff seeks to pursue private causes of action under the Rhode Island Constitution's due process and free speech clauses that have not been recognized under Rhode Island law, nor can they be created by this federal court.

- Plaintiff has brought defamation claims against President Dooley and Provost DeHayes.  Plaintiff does not identify a single allegedly defamatory statement made by President Dooley, so there is no basis for this claim against URI's former President.  Regarding Provost DeHayes, Plaintiff specifies only (1) the Provost's January 12, 2021 letter to Plaintiff regarding the University's decision to place him on administrative leave and (2) the Provost's January 22, 2021 memorandum to the faculty union representative, acting as Plaintiff's agent, responding to the union's request for information concerning the administrative leave.  Viewed in their entirely (and not just selectively quoted by Plaintiff in paragraphs 77 and 78 of his complaint), neither document relating to a personnel action constitutes a defamatory statement.  Further, neither document was published to a third party.

- Plaintiff seeks to pursue a state law contract claim, contending that the University breached the terms of his Faculty of Practice appointment for the 2020-21 academic year (which he curiously fails to even cite to or attach to his pleading, instead providing copies of his lapsed letters for prior academic years).  URI provides the applicable appointment letter with this filing, which incorporates the University's collective bargaining agreement with its faculty.  Plaintiff's employment relationship with URI cannot be addressed without reference to and interpretation of the collective bargaining agreement; consequently, § 301 of the Labor Management Relations Act preempts Plaintiff's state law contract claim.

- Plaintiff has not plead a plausible claim under the Rhode Island Whistleblowers' Protection Act. He fails to show that he ever engaged in any "protected activity," as defined under the statute. His subjective, publicly stated criticisms of URI's diversity efforts do not equate to the reporting of any violation of a law, regulation, or rule. Further, he has named President Dooley, Provost DeHayes, and Dean Riley individually in his whistleblower claim and, as this Court has held, the statute does not prescribe individual liability.

Plaintiff has excessively pled claims that fail to pass legal muster at the pleadings stage.

Before discovery progresses, Plaintiff's deficiently pled implausible claims should be dismissed.

## II.     BACKGROUND[4]

### A.     Plaintiff's Employment at URI

#### 1.     The Spring 2019 Semester

During the 2018-19 academic year, URI appointed Plaintiff as a Visiting Assistant Professor for the spring 2019 semester. Compl. ¶ 44, Ex. 1. The terms of Plaintiff's appointment for that single semester were stated in a letter dated November 20, 2018 and signed by URI's Director of Honors Programs. *Id.*

#### 2.     The 2019-20 Academic Year

For the 2019-20 academic year, URI appointed Plaintiff to a Faculty of Practice position in the Department of Political Science. *Id.* ¶ 46, Ex. 2. The terms of Plaintiff's appointment were stated in a letter dated July 1, 2019 and signed by Dean Riley and Plaintiff. Plaintiff attaches to his complaint a version of the appointment letter lacking his signature. Compl. Ex. 2. To correct

---

[4]     The URI Defendants dispute the truth of many of Plaintiff's alleged facts, but state those facts as they appear in the complaint because the Court must accept as true his well-pled, non-conclusory factual allegations for purposes of this motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The URI Defendants reserve the right to contest the truth of the allegations and show the actual facts at the appropriate juncture, to the extent that this litigation proceeds past the Rule 12(b)(6) stage.

the record, the URI Defendants provide the Court with an authentic copy of the fully executed letter at Exhibit A to the concurrently filed declaration of Steven M. Richard, Esq.[5]

For the 2019-20 academic year, URI employed Plaintiff in "a one-year position with possible annual reappointments through 2024-25 following an annual evaluation/review of teaching and student advising performance and depending on funding and availability of the position." Richard Decl., Ex. A. Plaintiff's appointment was subject to "regulations as set forth in the *University Manual*; other University policies, practices and procedures; and the provisions of the *Collective Bargaining Agreement between the Rhode Island Council on Postsecondary Education and the URI Chapter of the American Association of University Professors*." *Id*. Plaintiff's academic year 2019-20 appointment letter "supercede[d] all other agreements, oral or written, between the parties" and stated the "complete agreement between [Plaintiff] and the University." *Id*.

The University's collective bargaining agreement ("CBA") with its faculty applied to the terms of Plaintiff's employment. Richard Decl., Ex. B. The CBA states that a Faculty of Practice appointment entails a full-time or part-time, non-tenure track academic year employee, whose primary duties and responsibilities are teaching. *Id*., Ex. B, p. 49. "Appointment to the position of Faculty of Practice is on an annual basis for a period not to exceed five years maximum." *Id*.

---

[5]    In deciding a motion to dismiss, the Court may properly consider the entire contract and any other documents that are central to the plaintiff's claim. *Newman v. Lehman Bros. Holdings, Inc.*, 901 F.3d 19, 27 (1st Cir. 2018). Regarding the documents affixed to Attorney Richard's declaration, the URI Defendants provide them consistent with the First Circuit's recognition that the Court may consider at the Rule 12(b)(6) stage documents the authenticity of which are not disputed by the parties, official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id*. (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).

The CBA governs "defined period appointments," prescribing that "[t]he awarding of an appointment or subsequent reappointments by the University to an individual implies no commitment on the part of the University beyond the term of the appointment." *Id*. at p. 56.

### 3. The 2020-21 Academic Year

Although not expressly pled by Plaintiff, it is undisputed that URI reappointed Plaintiff to a Faculty of Practice position for the 2020-21 academic year.  Plaintiff's complaint fails to cite to or attach Plaintiff's appointment letter for the 2020-21 academic year.  Again to correct the record, URI provides the Court with an authentic copy of Dean Riley's reappointment letter to Plaintiff dated May 15, 2020.  Richard Decl., Ex. C.  URI reappointed Plaintiff to "a one-year position with possible annual reappointments through 2024-25 following an annual review of teaching and student advising performance and depending on funding and availability of the position." *Id*. Plaintiff's employment for the 2020-21 academic year remained subject to the University Manual, "Federal, State, and University policies, practices, and procedures," and the CBA's provisions. *Id*.

### B. Events During The 2020-21 Academic Year[6]

During the fall 2020 semester, Plaintiff taught a class based on advocacy in institutions titled, "*Topics in Political Science: Examining Institutional Power, Checks & Balances, and Advocacy for a More Equitable Society.*" Compl. ¶¶ 47-51.  On or about September 8, 2020, Plaintiff incorporated "a non-profit institution" titled the Diversity Think Tank ("DTT").[7]  On October 13, 2020, the DTT went "live online" with a mandate of addressing diversity issues in academic institutions. *Id*. ¶ 52.  The DTT's membership included faculty and students. *Id*. ¶ 53.

---

[6]   Plaintiff's allegations are replete with his subjective assertions that totally mischaracterize and grossly distort URI's record on diversity.  The University Defendants will not credit Plaintiff's mischaracterizations and distortions by restating them here.

[7]   According to the Rhode Island Secretary of State's Corporate Database, Plaintiff incorporated the DTT as a Rhode Island non-profit corporation.  Richard Decl., Ex. D.

6

On October 24, 2020, the DTT published a document titled the Declaration of Diversity ("DOD"), which listed grievances and recommendations.  *Id.* ¶¶ 53-54.  The DOD stated the DTT's views on what it perceived to be systemic racial discrimination in the hiring, treatment and promotion of African-Americans at URI.  *Id.* ¶¶ 55-56.  On October 26, 2020, Plaintiff sent the DOD to senior URI officials, including President Dooley and the University's Board of Trustees. *Id.* ¶ 56.

On October 27, 2020, Dean Riley informed Plaintiff that the Provost's office had received a complaint from a student about Plaintiff's conduct, expressing concerns about the nature of Plaintiff's email communications to the students in his class.  *Id.* ¶ 57.  Plaintiff alleges that he sought to meet with Dean Riley and was told that a meeting was unnecessary.  *Id.* ¶ 58.  He alleges that this is the only complaint against him that was brought to his attention at URI.  *Id.* ¶ 59. Plaintiff alleges that he received positive student reviews and support from the chair of the Political Science Department.  *Id.* ¶¶ 61-62, 65-66.

In an email communication dated December 6, 2020, Plaintiff requested that Provost DeHayes meet with him and students regarding the DOD.  *Id.* ¶ 67.  In a response dated December 7, 2020, which was signed by both President Dooley and Provost DeHayes, the President and Provost declined the request for the reasons stated in their communication.  At paragraph 68 of his complaint, Plaintiff selectively quotes from the response to minimize its legitimate justifications, including the DOD's "unwarranted, unsubstantiated, and defamatory attacks on several members of the URI community" and Plaintiff's ongoing public efforts to "demonize members of our community with whom you may have disagreements."  Richard Decl., Ex. E.

Beginning in December 2020 and continuing thereafter, faculty and students dissociated themselves from the DTT.  Compl. ¶ 76.  On January 12, 2021 (after attempting to reach Plaintiff

7

several times and receiving no response), Provost DeHayes wrote to Plaintiff to inform him that the University was placing him on administrative leave with pay because of several concerns and reports of Plaintiff's misconduct, including his coercion, exploitation and intimidation of employees and students within the URI community.  Compl. ¶¶ 70, 77; Richard Decl., Ex. F.

Because Plaintiff's Faculty of Practice appointment for the 2020-21 academic year was subject to the CBA, Provost DeHayes sent a memorandum dated January 22, 2021 to Jay Walsh, the Executive Director of the URI American Association of University Professors, regarding Plaintiff's administrative leave.  Compl. ¶ 78; Richard Decl., Ex. G.  As Plaintiff's union representative,[8] Mr. Walsh had requested on January 13, 2021 that the Provost provide the union with information concerning the administrative leave.  Richard Decl., Ex. G.  In paragraph 78 of his complaint, Plaintiff selectively quotes from Provost DeHayes' response to Mr. Walsh.  The Provost's response speaks for itself in detailing several serious reported concerns about Plaintiff's misconduct toward employees and students.  Richard Decl., Ex. G.

Plaintiff's complaint is silent regarding the next nearly three months, as URI investigated the reports against him.  Instead, Plaintiff's pleading jumps ahead in time to Provost DeHayes' letter to him dated April 16, 2021.  Compl. ¶ 79.  Again, Plaintiff selectively quotes from the cited document, seeking to diminish and distort its full contents.  Actually, the Provost's letter states the University's concerns regarding Plaintiff's continuing violations of several University policies while on administrative leave and his violations of federal law by wrongly publicizing confidential student information protected by the Family Educational Rights and Privacy Act.  Richard Decl., Ex. H.  Also, the Provost noted the University's receipt of additional complaints against Plaintiff.  *Id*.  Further, the Provost advised Plaintiff that the University would not condone his improper,

---

[8]   Plaintiff describes Mr. Walsh as "the URI teachers' union representative."  Compl. ¶ 79.

purposeful interference with its ongoing investigation of the reports and complaints, which was being conducted by an external investigator, Attorney Jeffrey Michaelson.  *Id.*   Plaintiff wrongly pleads that the University did not order and commence its investigation until April 16, 2021 (three months after he was placed on administrative leave) (Compl. ¶ 80), which Plaintiff knows is untrue.  As the referenced April 16, 2021 letter states, the University's investigation was ongoing at that time with Plaintiff's knowledge.  Richard Decl., Ex. H.

On May 11, 2021, Provost DeHayes wrote to Plaintiff regarding the finalized investigative report, which detailed "numerous behaviors and actions on your part that we consider to be inconsistent with and/or in violation of university policies, regulations, standards, and agreement provisions as set forth in several institutional documents (e.g., University Manual, Collective Bargaining Agreement, Student Rights and Responsibilities, and URI Cornerstones)."  Compl. ¶¶ 81-83, Richard Decl. Ex. I.  Provost DeHayes summarized the findings evidencing that Plaintiff had engaged in serious violations of URI's policies and community standards.  Richard Decl., Ex. I.  Consequently, the University determined that Plaintiff would remain on paid administrative leave through the end of the 2020-21 academic year and that his Faculty of Practice appointment would not be renewed and would be eliminated for the 2021-22 academic year.  *Id.*

## III.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure require a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must have sufficient factual allegations that plausibly state a claim upon which relief can be granted.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires more than a recitation of elements and must allow the Court to draw a reasonable inference that a defendant is liable.  *Ashcroft*, 556 U.S. at 675.  The Court must accept the plaintiff's well-pled

factual allegations as true and construe them in the light most favorable to the plaintiff.  *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009).

## IV.   ARGUMENT

### A.   Plaintiff's federal due process and equal protection claims fail to state plausible causes of action.

#### 1.   Plaintiff has not pled a protected property interest to support his § 1983 procedural due process claim under the Fourteenth Amendment.

In his second count which is asserted against all of the URI Defendants, Plaintiff's procedural due process claim alleges that he was deprived of a "protected property interest" to continued employment at URI.  Compl. ¶ 100.  To support a due process claim stemming from the loss of public employment, Plaintiff must show that he had a cognizable property interest in continued employment.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  That interest must be rooted in state law.  *Id*.  Specifically, Plaintiff must show that his claim of a right to continued employment at URI is established under Rhode Island law by a statute, policy, rule, or contract. *Venteuolo v. Burke*, 596 F.2d 476, 480 (1st Cir. 1979).

Plaintiff has not pled and cannot show that any statute, policy, or rule afforded him with a constitutionally-protected property interest to employment at URI beyond the 2020-21 academic year.  Plaintiff's only conceivable basis would have to be a contractual one.  Yet, both the CBA and his appointment letter fixed the term of Plaintiff's employment for only the 2020-21 academic year.  Richard Decl., Ex. B at p.49, Ex. C.  While Plaintiff was eligible for a possible reappointment for the 2021-22 academic year, it was not guaranteed that he would be reappointed for another academic year, such that Plaintiff possessed a constitutionally protected property right to a reappointment.  *Id*.  As stated in the CBA addressing the University's "defined period [faculty] appointments," "[t]he awarding of an appointment or subsequent reappointments by the University

implies no commitment on the part of the University beyond the term of appointment."  Richard

Decl., Ex. B at p. 56.  Accordingly, Plaintiff's procedural due process claim fails as a matter of

law because he had no constitutionally protected property interest in employment at URI beyond

the 2020-21 academic year.

> **2.    Plaintiff has not sufficiently pled selective treatment to state a § 1983 equal protection claim under the Fourteenth Amendment.**

In his third count which is asserted against all of the URI Defendants, Plaintiff alleges

generally that "[b]y punishing Plaintiff without a hearing and disciplining him differently and more

harshly than similarly situated professors at URI, Defendants have deprived Plaintiff his legitimate

claim of entitlement to procedures of fundamental fairness."  Compl. ¶ 108.  The complaint's

factual allegations are similarly bare.  Plaintiff merely states a generic conclusory allegation that

"[t]he punishment of placing Professor Fosu on administrative leave was extraordinary and

unprecedented at URI.  Professors who have been accused of actual serious misconduct have not

been placed on administrative leave.  Neither have professors that have made provocative public

remarks on the issues of gender and sexuality."  *Id*. at ¶ 73.

To establish an equal protection violation based on alleged selective enforcement, Plaintiff

must show that "(1) the person, compared with others similarly situated, was selectively treated;

and (2) that such selective treatment was based on impermissible considerations such as race,

religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith

intent to injure a person."  *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995) (quoting

*Yerardi's Moody St. Restaurant & Lounge, Inc.  v. Bd. of Selectman*, 878 F.2d 16, 21 (1st Cir.

1989)).  To determine whether individuals are similarly situated, the "test is whether a prudent

person, looking objectively at the incidents, would think them roughly equivalent and the

protagonists similarly situated … the 'relevant aspects' are those factual elements which determine

whether the reasoned analogy supports, or demands, a like result." *Aponte-Ramos v. Alverez-Rubio*, 783 F.3d 905, 909 (1st Cir. 2015) (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mort. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001)).

Plaintiff's pleading fails to provide the necessary specificity about alleged comparators to avoid the dismissal of his equal protection claim. *Zell v. Ricci*, 957 F.3d 1, 13 (1st Cir. 2020) (affirming the dismissal of an equal protection claim that fell "far short" of sufficiently describing that the alleged comparators were "similarly situated [to the plaintiff] in all respects."). "Moreover, even supposing the comparators [have] been clearly pled, the complaint fails to allege that there was no rational basis for 'the adverse and differential treatment' the complaint mentions and, further, that such treatment was based on a malicious or bad faith intent to injure. An equal protection claimant may not prevail [against a Rule 12(b)(6) motion] simply by asserting an inequality and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." *Id.* at 13-14 (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992)).

Also, Plaintiff's equal protection count does not plead any protected status. Compl. ¶¶ 106-09. Instead, he seems to assert a "class of one" theory, which exists "'where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment.'" *Id.* at 13 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium)); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2014). The Supreme Court, however, has held that the "class of one" theory does not apply in public employment lawsuits. *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 607-08 (2008). If Plaintiff is relying upon such a theory (which is unclear from his conclusory pleading of alleged selective enforcement), it fails as a matter of law.

**B.     Plaintiff's state law claims fail to state plausible causes of action.**

**1.     Neither the Rhode Island General Assembly nor the Rhode Island Supreme Court has recognized a private cause of action under article 1, sections 2 and 21 of the Rhode Island Constitution.**

In his fourth count pled against all of the University Defendants, Plaintiff asserts claims under the Rhode Island Constitution's due process clause in article 1, section 2 and its free speech clause in article 1, section 21.   Both are fatally flawed because Rhode Island law has not recognized, either legislatively or judicially, a litigant's ability to assert such a constitutional claim in a private cause of action.

Regarding Plaintiff's claim alleging a due process violation under article 1, section 2, the Rhode Island Supreme Court recently held in *Jane Doe v. Brown University*, 253 A.3d 389, 398-401 (R.I. 2021), that the clauses stated in section 2 do not give rise to any private cause of action.[9] Applying its precedent established in *Bandoni v. State*, 715 A.2d 580 (R.I. 1998), the Rhode Island Supreme Court held in *Doe* that "article 1, section 2 expresses only general principles and does not supply a sufficient rule of law by which the rights under the clause may be enjoyed, protected, and enforced; and thus, this clause is not self-executing."  *Id*. at 400.

> Article 1, section 2 articulates general principles and the constitutional provision does not set forth rules that give those principles the force of law.  The provision also does not provide means pursuant to which those included in the provision can enjoy or protect those rights.  Clearly, the provision itself does not expressly provide a cause of action for damages.  Further, we are not persuaded by the use of the word "shall" in article 1, section 2.  We have reiterated that a constitutional provision may be expressed in mandatory terms and still not be self-executing.

*Id*. (internal quotation marks and citations omitted).

---

[9]     Article 1, section 2 contains three clauses – a due process clause, an equal protection clause and an antidiscrimination clause.

Stressing judicial restraint, the Rhode Island Supreme Court has held that the General Assembly, not the judiciary, should create a constitutional cause of action under the Rhode Island Constitution. *Bandoni*, 715 A.2d at 596. As reiterated in *Doe*, "'the function of adjusting remedies to rights is a legislative responsibility rather than a judicial task,' and such a remedy has not been provided for under these circumstances." *Id.* (quoting *Bandoni*, *supra*). *Doe* compels the dismissal of Plaintiff's claim citing to article 1, section 2's due process clause.[10]

Plaintiff's state law free speech claim fares no better. Similar to the First Amendment of the United States Constitution, article 1, section 21 of the Rhode Island Constitution bars the legislature from making any law "abridging the freedom of speech." *See*, *e.g.*, *Town of Barrington v. Blake*, 568 A.2d 1015 (R.I. 1990) (addressing the constitutionality of a municipality's ordinance regarding picketing). Here, no legislative enactment is at issue. And, Rhode Island law has not recognized a private cause of action under the Rhode Island Constitution's free speech clause. *Doe v. Trs. of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019) ("Federal Courts are not free to extend the reach of state law.") (citing *Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)).

---

[10] This Court initially adjudicated the *Doe* litigation. C.A. No. 2016-cv-614-JJM-LDA. The Court granted a judgment in Brown University's favor on the claim under Title IX of the Education Amendments of 1972, but declined to retain supplemental jurisdiction over the state law claims pled under the Rhode Island Constitution and the Rhode Island Civil Rights Act ("RICRA"). *Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 563-64 (D.R.I. 2017) ("state law issues should be avoided particularly when an interpretation of state constitution is involved"). The First Circuit affirmed the judgment regarding the Title IX claim. *Doe v. Brown Univ.*, 896 F.3d 127 (1st Cir. 2018). The plaintiff filed a lawsuit in the Rhode Island Superior Court seeking relief under the Rhode Island Constitution and RICRA, which was dismissed at the Rule 12(b)(6) stage. The Rhode Island Supreme Court affirmed the judgment in the above-cited ruling.

2.     **Plaintiff has not pled a prima facie defamation claim against either President Dooley or Provost DeHayes.**

a.     **Plaintiff bases his defamation claim upon two documents written and issued for the purpose of an internal personnel action.**

In his fifth count which is asserted against President Dooley and Provost DeHayes, Plaintiff identifies two documents as the support for his purported defamation claim. Compl. ¶ 116. First, Plaintiff cites Provost DeHayes' letter dated January 12, 2021, informing Plaintiff that the University had placed him on administrative leave with pay. *Id.* ¶¶ 77, 116; Richard Decl., Ex. F. Provost DeHayes' letter was addressed and sent to Plaintiff. Richard Dec., Ex. F. A copy was provided to Dean Riley, as the Dean, College of Arts and Sciences; Marc Hutchinson, as the Chair of the Department of Political Science; Jay Walsh, as Executive Director of the faculty's union; and URI's Office of Human Resources.

Second, Plaintiff cites Provost DeHayes' January 22, 2021 memorandum to Mr. Walsh, as Plaintiff's union's representative, responding to the faculty union's request for information concerning Plaintiff's administrative leave. Compl. ¶¶ 78, 116; Richard Decl., Ex. G. As noted in the memorandum, Mr. Walsh requested information on the faculty union's behalf on January 13, 2021 (the day after URI placed Plaintiff on administrative leave with pay). Richard Decl., Ex. G. A copy of the memorandum was provided to two URI senior administrators with managerial responsibilities in the University's collectively bargained relationship with the faculty's union: Vice President Matthew Bodah and Associate Vice President Anne Marie Coleman. *Id.*

b.     **Plaintiff bears a substantial burden to show a defamation claim.**

The Rhode Island Supreme Court has emphasized that defamation, with its limitation on speech, requires a claimant to carry a substantial burden. *Burke v. Gregg*, 55 A.3d 212, 219 (R.I. 2012) (affirming Rule 12(b)(6) dismissal of a defamation claim). As a result, "cases holding that

a particular comment is defamatory are few and far between." *Id*. at 220.  To illustrate, the Rhode

Island Supreme Court referenced in *Burke* with approval to the "countless" cases nationally, *id*.,

where the speech was found to be offensive and egregious (beyond what Plaintiff alleges here in

paragraphs 77 and 78 of his complaint), yet not defamatory.  *E.g.*, *Fram v. Yellow Cab Co.*, 380 F.

Supp. 1314, 1329 (W.D. Pa. 1974) (words "paranoid" and "schizophrenic" not defamatory);

*Bloomberg v. Cox. Enters.*, Inc., 491 S.E. 2d 430, 433 (Ga. Ct. App. 1997) (statement that a

plaintiff is a "silver-tongued devil" not defamatory); *Pace v. Rebore*, 485 N.Y.S. 291, 293 (N.Y.

App. Div. 1985) (statement that plaintiffs used "political clout" to obtain a tax exemption not

defamatory).

Under Rhode Island law, a defamation plaintiff must prove: "(a) a false and defamatory

statement concerning another; (b) an unprivileged communication to a third party; (c) fault

amounting to at least negligence on the part of the publisher; and (d) damages, unless the statement

is actionable irrespective of special harm."  *Healey v. New England Newspapers, Inc.*, 555 A.2d

321, 324 (R.I. 1989) (internal quotation marks omitted).

Regarding the first element, the Rhode Island Supreme Court held that "[i]t is well settled

that whether a particular communication is defamatory or not is a question of law for the court to

decide, and not an issue of fact for the jury."  *Burke*, 55 A.3d at 218 (citations omitted).  This

determination may be made at the Rule 12(b)(6) stage on the pleadings.  *Id*. at 220.  "[A] plaintiff

must show that the statement is 'false and malicious, imputing conduct which injuriously affects a

man[']s reputation, or which tends to degrade him in society or bring him into public hatred and

contempt . . . .'"  *Id.* at 218 (quoting *Reid. v. Providence Journal Co.*, 20 R.I. 120, 124-25, 37 A.

637, 638 (1897)).  "The decisive question is what the person or persons to whom the

communication was published reasonably understood as the meaning intended to be expressed." *Marcil*, 936 A.2d at 213 (citation omitted).

"Words alleged to be defamatory must be read in the context of the publication in which they appear, taken as a whole." *Lyons v. R.I. Pub. Emps. Council 94*, 516 A.2d 1339, 1343 (R.I. 1986). The accused publication must be considered in its totality, with the verbiage construed in its plain and ordinary sense from the point of view of an ordinary reader. *Burke*, 55 A.3d at 219 (where the gist of an article with allegedly erroneous statements permits "an impression of an event that is mean-spirited," and has "inescapably critical tone," comments are still not defamatory because they could not "reasonably be interpreted to have injuriously affected [plaintiff's] reputation, degraded him in society, or brought him into public hatred and contempt"). The Court's analysis should begin with the message as a whole, looking at the "gist" and "sting" of the communication, *McKee v, Cosby*, 874 F.3d 54, 59, 62 (1st Cir. 2017), and must focus on all of the words used, "not merely a particular phrase or sentence." *Froess v. Bulman*, 610 F. Supp. 332, 340 (D.R.I. 1984) (internal quotation marks omitted), *aff'd.*, 767 F.2d 905 (1st Cir. 1985). The allegedly defamatory words should not be read in isolation, as Plaintiff wrongly seeks to accomplish through the selective quoting in his pleading. *Burke*, 55 A.3d at 218-19 (citing *Marcil*, 936 A.2d at 213).

> **c.   Plaintiff fails to identify any alleged defamatory statement by President Dooley.**

Neither Provost DeHayes' January 12, 2021 letter to Plaintiff nor his January 22, 2021 memorandum to Mr. Walsh contains any statement by President Dooley, so Plaintiff's defamation claim against URI's former President him must be dismissed.

          **d.**      **When read as a whole and not just selectively quoted by Plaintiff, the Provost's January 12, 2021 letter and January 22, 2021 memorandum do not constitute defamatory statements.**

Again, the Court must review the context of a communication in the totality of its circumstances. *Burke*, 55 A.3d at 319.  Read holistically, the two cited documents provide notice to Plaintiff and his union representative of the reasons for the University's personnel action of placing Plaintiff on administrative leave with pay.

The URI Defendants have provided both the January 12, 2021 letter and the January 22, 2021 memorandum, so that the Court may review their context and the totality of the circumstances.  Leaving that legal review and determination to the Court, the URI Defendants address here Plaintiff's selective quoting of each communication in his pleading.

In paragraph 77 of his complaint, referencing Provost DeHayes' January 12, 2021 letter to him, Plaintiff alleges that he was accused of "coercion, exploitation, and intimidation relating to student expression" and was demeaned by the letter's usage of the words "hostile, disrespectful, and/or non collegial as well as disruptive."  The full paragraph containing these words states as follows:

> The University is taking this action because of very serious concerns arising from various credible complaints, allegations, reports and communications that have been raised by several University officials.  Some of these concerns were referenced in my two prior letters to you.  Our serious concerns relate to certain aspects of (1) your behavior and interactions with students in your classes, such as assertions of **coercion, exploitation, and intimidation relating to student expression** that obstruct the free pursuit of learning for students; and (2) your behavior as an employee and your interactions and communications with University faculty and staff, including individuals in your department, that have been **hostile, disrespectful, and/or non collegial** as well as disruptive to departmental and university functions and operations, and potentially damaging to the reputation of individuals and the university.

Richard Decl., Ex. F (words cited by Plaintiff in bold).  The mere fact that Plaintiff may have been "shocked" and "dismayed" by the University's stated justifications for its personnel action does not make this communication defamatory.

In paragraph 78 of his Complaint, Plaintiff selectively quotes from the Provost's detailed January 22, 2021 memorandum to Plaintiff's union representative responding to a request for information.  Plaintiff pulls out of the memorandum the words "intimidation," "retribution," "yelling," and "misogynistic."  The Court can read the memorandum in its entirety to confirm how Plaintiff is wrongly trying to concoct a defamation claim, by distorting the full context of the document and omitting its material language directly connected to what he has cited.  For example, Plaintiff pleads that he was wrongly accused of being "misogynistic and abusive," but he fails to provide the fully stated content and context of the University's concern, which reads as follows:

> Faculty and staff have felt that Mr. Fosu's behaviors have been misogynistic and abusive and have targeted female faculty members and staff.  For instance, Mr. Fosu has called for individual employment terminations, but only for female faculty and staff.

Richard Decl., Ex. G, p. 2.

In sum, both communications cited by Plaintiff as the support for his defamation claim are actually documents that provided him and his union representative with notice of and the justification for the University's placement of Plaintiff on administrative leave with pay.  When put in their proper context and read in their entirety, these internal communications to Plaintiff and his union representative hardly support a defamation claim.

> **e**.     **If Plaintiff's claim clears the first hurdle of showing an alleged defamatory statement, it crashes at the second hurdle for its failure to plead an unprivileged communication to a third party.**

Provost DeHayes provided a copy of his January 12 letter addressed to Plaintiff, regarding the administrative leave action, to the dean of the college and the chair of the department in which

19

Plaintiff taught and to the University's Human Resources Office.  Provost DeHayes provided a copy of the January 22 memorandum addressed to Plaintiff's union representative to two URI senior administrators with responsibility for the University's collectively bargained relationship with the faculty's union.

Nationally, courts have varied in their interpretation of the intra-corporate privilege, where an allegedly defamatory statement was circulated or shared internally for legitimate business purposes.  *See*, *e.g.*, *Wilkerson v. Parish of Jefferson*, Civ. A. No. 20-3031, 2021 WL 2436355, at * 9 (E.D. La. June 14, 2021) ("'an intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, [is] a communication of the corporation', not a publication to a third party.") (citation omitted); *Bailey v. Nexstar Broadcasting, Inc*., No. 3:19-CV-00671(VLB), 2020 WL 1083682, at *6 (D. Conn. Mar. 6, 2020) ("[T]he Connecticut Supreme Court recognized a qualified privilege for 'intracorporate communications in the context of employment decisions.' Under this rule, 'communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege.  Such communications and documents are necessary to effectuate the interest of the employer in efficiently managing its business.'") (citation omitted); *Muhammad v. Westinghouse Elec. Co.*, C/A No. 3:12-CV-03298-JFA, 2013 WL 5469982, at *8 (D.S.C. Sept. 30, 2013) ("[c]onclusory statements are insufficient to overcome the intra-corporate privilege that attached to a communication among the Individual Defendants:"); *Kurtz v. Williams*, 188 Ga. App. 14, 371 S.E. 2d 878, 880 (Ga. App. 1988) (there is no publication and therefore no cause of action for slander "when the communication is intracorporate, . . ., and is heard by one who, because of his/her duty or authority has a reason to receive the information  . . .").

The Rhode Island Supreme Court has yet to interpret specifically whether a defamation claim can be based upon the intra-corporate sharing of a personnel action among administrators, who have a legitimate business need to know of the action and information. Generally, the Court has recognized a qualified privilege that "allows a person to avoid liability for a false or defamatory statement if the publication is such that the publisher acting in good faith correctly and reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person[s] or certain interests of the public." *Ims v. Town of Portsmouth*, 32 A.2d 914, 930 (R.I. 2011) (quoting *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 551, 247 A.2d 303, 305-06 (1968)). For the qualified privilege to apply, there must be a "reciprocity of duty" between the publisher of the statement and the recipient, "such that the latter has an interest in receiving the information that corresponds with that of the publisher receiving it." *Avila v. Newport Grand Jai Alai, LLC*, 935 A.2d 91, 96 (R.I. 2007) (citing *Mills v. C.H.I.L.D.*, 837 A.2d 714, 720 (R.I. 2003)). Plaintiff has not pled any plausible allegations to suggest that Provost DeHayes acted improperly by internally sending copies of the January 12 letter and January 21 memorandum to a limited number of URI administrators, who had legitimate business reasons to be informed of the University's communications with Plaintiff and his faculty union representative pertaining to a personnel action.

### f.   Plaintiff cannot save his defamation claim through pure speculation.

Finally, Plaintiff speculates that there could be "other false and defamatory statements against Plaintiff that will be revealed through discovery in this action." Compl. ¶ 116. Plaintiff's speculation is wholly insufficient to satisfy his pleading burden. *See*, *e.g.*, *Ruiz Rivera v. Pfizer Pharm., LLC.*, 521 F.3d 76, 84 (1st Cir. 2008) (a pleading must put defendant on notice of the claims against it.).

3.    **Plaintiff's state law breach of contract claim is preempted by § 301 of the Labor Management Relations Act.**

In his sixth count which is asserted against URI, Plaintiff pleads a breach of contract claim under Rhode Island law, apparently contending that URI breached his Faculty of Practice appointment letter for the 2020-21 academic year.  Compl.  ¶ 120.  As noted above, Plaintiff has not cited to nor attached his appointment letter for that academic year, which URI has provided to the Court.  Richard Decl., Ex. C.  As stated in the letter, Plaintiff's employment for the 2020-21 academic year was subject to URI's CBA with its faculty union.  *Id.*

Section 301 of the LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  The United States Supreme Court "treats section 301 as a warrant both for removing to federal court state law claims preempted by section 301 and then dismissing them."  *O'Donnell v. Boggs*, 611 F.3d 50, 53 (1st Cir. 2010) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21 (1985); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 559-60 (1968)).  The First Circuit has held that "§301 preempts a state-law claim when 'the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'"  *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54-55 (1st Cir. 2011) (quoting *Flibotte v. Pa. Truck Lines, Inc*., 131 F.3d 21, 26 (1st Cir. 1997)).  *See also*, *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) ("It is now apodictic that the LMRA thoroughly occupies the field of labor contract disputes.") (citing *Allis-Chambers Corp.*, 471 U.S. at 211).

A state law contract claim may depend on the meaning of a collective bargaining agreement "if either (1) 'it alleges conduct that constitutes a breach of duty that arises pursuant to the collective bargaining agreement,' or (2) 'its resolution arguably hinges upon the interpretation of

22

the collective bargaining agreement.'"  *Haggins*, 648 F.3d at 55 (quoting *Flibotte*, 131 F.3d at 26).

If the state law claim can be resolved without interpreting the collective bargaining agreement, the

claim is independent of the agreement for § 301 preemption purposes.  *Lingle v. Norge Div. of*

*Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

Here, the terms of Plaintiff's 2020-21 academic year appointment were not independent of

URI's CBA with its faculty, and his breach of contract claim cannot be resolved without

interpretation of the CBA.  In fact, the CBA's applicability is evidenced by Plaintiff's apparent

first action after being placed on administrative leave on January 12, 2021, which was to have his

faculty union representative (Mr. Walsh) contact Provost DeHayes on January 13, 2021.  Richard

Decl., Ex. G.

The CBA recognizes the Faculty of Practice position as part of the faculty's bargaining

unit.  Richard Decl., Ex. B. at p. 2.  The CBA delineates the terms and rights of a Faculty of

Practice member's annual appointment at the University.  *Id*. at pp. 49-50.  The CBA prescribes

that it is a non-tenure track position held on a year-to-year basis.  *Id*. at p. 49.  The CBA expressly

limits the rights and process afforded to Faculty of Practice employees, compared to tenured or

tenure-track faculty (e.g., no tenure or promotion rights and no right to file a grievance).  *Id*. at pp.

49-50.  The CBA specifically addresses "defined period appointments," stating that "[t]he

awarding of an appointment or subsequent reappointments by the University implies no

commitment on the part of the University beyond the term of appointment."  *Id*. at p. 56.

The CBA addresses faculty members' activities and conduct, as exercised concurrent with

the University Manual (cited in paragraph 74 of Plaintiff's complaint).  If there is any conflict, the

CBA shall take precedence over the University Manual.  *Id*. at p. 3.  Article VII of the CBA

addresses the principles and scope of academic freedom afforded to URI's faculty, and Article

VIII prescribes professional ethics and responsibilities that URI expects of its faculty.  *Id*. at pp. 4-5.  The various URI communications cited in Plaintiff's complaint evidence that the University received and investigated Plaintiff's misconduct, in which he contravened the requirements of the University's Manual and the CBA's professional ethics and responsibilities under Article 8.  Richard Decl., Exs. F-H; *see also* Article 8.1 of the CBA; Richard Decl., Ex. B at pp. 6-7.

Additionally, the CBA states that "Faculty of Practice members shall be reviewed annually."  *Id*.  Ex. B, p. 50.   Plaintiff implies that the Department Chair's observation of a November 13, 2020 class session that Plaintiff taught (during the fall 2020 semester and two months into the 2020-21 academic year) equates to the annual review referenced in his 2020-21 appointment letter.  Compl. ¶ 62.  Again, a question of the interpretation of the CBA is posed, showing its interrelationship with Plaintiff's appointment letter.

Plaintiff's appointment letter for the 2020-21 academic year does not stand by itself and cannot be applied on its face, without referring to and interpreting the CBA.  Consequently, § 301 of the LMRA mandates the dismissal of the preempted state law contract claim.

> **4.     Plaintiff fails to state a claim under the Rhode Island Whistleblowers' Protection Act because his allegations do not identify any protected conduct, plus there is no individual liability under the statute.**

The Rhode Island Whistleblowers' Protection Act ("RIWPA") seeks "to encourage the prompt reporting and early, amicable resolution of potentially dangerous workplace situations, and to protect those employees who do report such violations from retaliatory action by employers."  *Malone v. Lockheed Martin Corp.*, C.A. No. 07-065-ML, 2009 WL 2151706, at * 12 (D.R.I. July 16, 2009), *aff'd*., 610 F.3d 16 (1st Cir. 2010).  To state a *prima facie* case, Plaintiff must show (1) that he engaged in protected whistleblowing conduct as defined under the RIWPA, (2) that he suffered an adverse employment action at the time or thereafter, and (3) that the adverse action

was causally related to the protected conduct.  *Chagnon v. Lifespan Corp.*, C.A. No. 15-493S, 2017 WL 3278952, at * 6 (D.R.I. June 19, 2017) (adopted 2017 WL 3278858 (D.R.I. Aug. 1, 2017)).  Plaintiff's complaint fails at the first required element – that he engaged in RIWPA protected whistleblowing conduct.

In his seventh count which is asserted against all of the URI Defendants, Plaintiff just pleads a single-paragraph, conclusory allegation that the URI Defendants violated the RIWPA "by subjecting him to adverse work actions in retaliation for his protected activities."  Compl. ¶ 123. Plaintiff fails to identify what protected conduct, as defined by R.I. Gen. Laws § 28-50-3, in which he purportedly engaged.  He does not allege that he reported to a "public body" any alleged violation of law, regulation or rule to invoke protection under §§ 28-50-3(1) and (2).[11]  He does not allege that he refused to violate or assist in violating any federal, state or local rule law, rule or regulation to invoke protection under §§ 28-50-3(3).

Plaintiff may be seeking to rely upon § 28-50-3(4), which states:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:

. . .

(4) Because the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of **a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States**, unless the employee knows or has reason to know that the report is false.  Provided, that if the report is verbally made, the employee must establish by clear and convincing evidence that the report was made.

---

[11]   Under Rhode Island law, a public body entails any department, agency, commission, committee, board, council, bureau, or authority or any subdivision thereof of state or municipal government.  *See*, *e.g.*, R.I. Gen. Laws § 42-46-2.

(Emphasis added).  Plaintiff's complaint does not specify that he ever reported to URI a violation of any <u>law</u>, <u>regulation</u>, or <u>rule</u>.  *Slay v. Bank of America Corp.*, C.A. No. 10-408ML, 2011 WL 104569, at * 12 (D.R.I. Mar. 9, 2011) (whistleblower claim dismissed for failure to state a claim because the plaintiff failed to identify a statute or regulation that the defendant's actions violated); *Gill, P.E. v. Alexion Pharmaceuticals, Inc.*, C.A. No. 18-696 WES, 2019 WL 3470771 at * 2 (D.R.I. July 31, 2019) (whistleblower claim dismissed because it did not identify which statute or regulation was violated by alleged "compliance matters," nor was the substance of the plaintiff's "compliance matters" pled in the complaint).[12]

In a similar vein, this Court has held that an employee cannot rest a whistleblowing claim merely upon issues that an employee "finds worthy of criticism or requiring correction." *Chagnon*, 2017 WL 3278952, at * 7 (citing *Slay*, 2011 WL 1045629, at * 12).  Rather, "the subject of the whistleblowing must amount to a violation of an identified federal, state or local law or regulation."  *Id*.  Plaintiff's RIWPA claim, which he bases entirely upon his publicly stated criticisms of the University's record concerning diversity, must be dismissed without any protected whistleblowing conduct as defined by the statute.

Finally, Plaintiff's RIWPA claim against President Dooley, Provost DeHayes and Dean Riley fails as a matter of law because the statute does not provide for individual liability.  The RIWPA limits liability only to an "employer."  R.I. Gen. Laws § 28-50-3.  ("An **employer** shall not discharge, threaten, or otherwise retaliate against an employee . . . ." (emphasis added)).  The RIWPA defines employer as follows: "One shall employ another if services are performed for

---

[12]   Plaintiff alludes to a report that he purportedly made to the Federal Bureau of Investigation sometime in late April 2021 about "allegedly threatening and harassing email communications related to this action."  Compl. ¶ 28.  He does not specify what he means by "this action," nor does he state how any of the unspecified communications somehow relate to anyone at URI or any protected whistleblowing conduct.

wages or under any contract for hire, written or oral, express or implied." § 28-50-2. URI was Plaintiff's employer, as is clear from Plaintiff's complaint (as well as the Faculty of Practice appointment letter for the 2020-21 academic year). Richard Decl., Ex. C.

While the RIWPA includes a definition of a "supervisor" in § 28-50-2, the General Assembly did not impose whistleblower liability on "supervisors" in § 28-50-3. Although President Dooley, Provost DeHayes and Dean Riley may meet the definition of "supervisors," they were not Plaintiff's employer and therefore cannot be subject to a RIWPA claim. *Johnson v. Urban League of R.I., Inc.*, No. CIV. A. 09-167 S, 2009 WL 3834129, at * 4 (D.R.I. Nov. 13, 2009) (granting motion to dismiss RIWPA claim against individual because the RIWPA does not provide for individual liability). *Cf. Mancini v. City of Providence,* 155 A.3d 159, 168 (R.I. 2017) (answering this Court's certified question to the Rhode Island Supreme Court in the negative regarding individual liability under the Rhode Island Fair Employment Practices Act).

## V.    CONCLUSION

For the above-stated reasons, the URI Defendants request that the Court dismiss counts ii-vii of Plaintiff's complaint for their failure to state plausible claims upon which relief can be granted.

Defendants,

By Their Attorney,

/s/ Steven M. Richard
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1020
Fax: 401-454-1030
Email: srichard@nixonpeabody.com
Dated: August 16, 2021

## **CERTIFICATE OF SERVICE**

I certify that, on the 16th day of August, 2021, this memorandum was filed and served upon counsel of record via the Court's CM/ECF system.

/s/ Steven M. Richard

4848-6518-4502.1