**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **LOUIS KWAME FOSU,**<br>**Plaintiff,**<br>**V.**<br>**THE UNIVERSITY OF RHODE ISLAND, UNIVERSITY OF RHODE ISLAND BOARD OF TRUSTEES, DAVID M. DOOLEY, PRESIDENT, THE UNIVERSITY OF RHODE ISLAND, DONALD DEHAYES, PROVOST AND VICE PRESIDENT FOR ACADEMIC AFFAIRS, AND JEANNETTE E. RILEY, DEAN, COLLEGE OF ARTS & SCIENCES, in their individual and official capacities,**<br>**Defendants.** | **C.A. No. 21-cv-279-JJM-PAS** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS II-VII OF PLAINTIFF'S COMPLAINT**

The University of Rhode Island ("URI" or the "University"), University of Rhode Island Board of Trustees, David M. Dooley, Donald DeHayes, and Jeannette Riley (collectively the "URI Defendants")[1] submit their reply memorandum in support of their motion to dismiss and responding to the opposition memorandum of Plaintiff Louis Kwame Fosu ("Plaintiff").

## I. PRELIMINARY POINTS

### A. The URI Defendants are proceeding entirely within their rights by pressing a partial motion to dismiss.

Plaintiff mischaracterizes the URI Defendants' Rule 12(b)(6) motion as a "baseless filing" and wrongfully accuses the defendants of acting improperly to delay discovery and future

[1] After their longstanding service to the University and its community, President Dooley and Provost DeHayes recently stepped down from their senior leadership positions. President Dooley's Presidency ended on July 31, 2021, and Provost DeHayes' tenure as the Provost ended on September 30, 2021.

proceedings in this litigation. Plaintiff makes serious accusations to which the URI Defendants must respond briefly and dispel directly.

Federal courts recognize that defendants may challenge some, but not all, of the pled counts through a Rule 12(b)(6) motion, before an answer must be filed and discovery will proceed. *See, e.g.*, *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001); *see also* Fed. R. Civ. P. 12(a)(4) and 12(b)(6). A partial motion to dismiss serves to evaluate the plausibility of what has been alleged applying *Twombly* and *Iqbal*,[2] define the precise claims that must be addressed in the defendants' answer with applicable affirmative defenses, and determine the matters subject of discovery going forward.

Consistent with the goals of Federal Rule of Civil Procedure 1 to secure the just, speedy, and inexpensive determination of this action and respecting their obligations under Rule 11, the URI Defendants carefully evaluated which of Plaintiff's claims to challenge in a motion to dismiss. The University Defendants stand by their motion because they have properly applied the Rule 12(b)(6) framework and are reasonably defending themselves in full conformity with the Federal and Local Rules. In fact, as a result of the URI Defendants' motion to dismiss, Plaintiff concedes that two of his causes of action fail as a matter of law: his state constitutional claim under the antidiscrimination clause of the Rhode Island Constitution (Count IV) and his claim seeking to sue the three individually named defendants under the Rhode Island Whistleblowers' Protection Act (Count VI).

**B. Plaintiff cannot expand his allegations through an opposition memorandum.**

In their motion, the URI Defendants address only what is pled in Plaintiff's Complaint and accept the truth of the allegations (as they must do at the pleadings stage of litigation, despite their

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

very strong disagreements with the allegations). Also, as allowed by the First Circuit, they have provided the Court with copies of material documents, whose authenticity is undisputed and which are described or partially quoted in Plaintiff's allegations. *See* Richard Declaration (Doc. No. 7, exhs. A-I).

By contrast, Plaintiff's opposition extends beyond the four corners of his pleading and the documents referenced therein, especially through his alleged comparisons to two newly identified URI professors and alleged characterizations of certain public statements issued by the University. Plaintiff cannot bolster his claims through his late addition of new allegations stated only in his opposition to the motion to dismiss, and the Court should not consider them in its Rule 12(b)(6) adjudication. The URI Defendants address this concern more specifically in the section below concerning Plaintiff's § 1983 equal protection claim. *See, e.g., Decoulos v. Town of Aquinnah*, No. 17-cv-11532, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018) ("[A]n opposition to a motion to dismiss is not the place for new factual allegations."); *Gordo-Gonzales v. United States*, No. 15-cv-01602, 2016 WL 10672229, at *2 (D.P.R. July 22, 2016) ("Using motion pleading to include new facts and law is an improper way to supplement or amend a complaint.").

## II. REPLY ARGUMENT

### A. Plaintiff did not have a protected property interest in his Faculty of Practice appointment beyond the 2020-21 academic year.

To support a plausible procedural due process claim, a plaintiff must show the deprivation of a protected property interest and denial of due process for that property interest. *Quinn v. City of Newport*, C.A. No. 17-012-JJM-PAS, 2019 WL 1989837, at *3 (D.R.I. May 6, 2019) (citing *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 30 (1st Cir. 2008)). "To show a protected property interest under circumstances of employment, an employee must have a legitimate claim of entitlement to continued employment – continued employment is thus the property interest." *Id.*

(citing *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)). A procedural due process claim requires more than "a unilateral expectation" of a property interest. *Town of Castle Hock v. Gonzales*, 545 U.S. 748, 756 (2005).

The analysis requires the interpretation of (1) the Agreement between Rhode Island Council on Postsecondary Education and University of Rhode Island Chapter American Association of University Professors (July 1, 2018 to June 30, 2021), which is the University's collective bargaining agreement with its faculty's bargaining unit, (2) Plaintiff's Faculty of Practice appointment letter dated July 1, 2019 for the 2019-20 academic year, and (3) Plaintiff's Faculty of Practice appointment letter dated May 15, 2020 for the 2020-21 academic year. *See* Docs 7-1 to 7-3.

The collective bargaining agreement is the starting point, which defines the duration, terms, and rights of the Faculty of Practice position compared to the other ranks of the University's faculty. As stated in the agreement, "[a]ppointment to the position of Faculty of Practice is on an annual basis for a period up to five years maximum." Doc. 7-2 at p. 53.[3] "General expectations and duties will be documented in the appointment letter." *Id*. at p. 54. "The awarding of an appointment or subsequent reappointments by the University implies no commitment on the part of the University beyond the term of appointment." *Id*. at p. 60. On page 8 of his memorandum, Plaintiff misinterprets the collective bargaining agreement, claiming that it is "silent and leaves the parties to fix the term" of a Faculty of Practice appointment. Actually, the collective bargaining agreement prescribes that a Faculty of Practice position is an appointment for an academic year.

---

[3] The cited page numbers correspond to the stamped ECF numbers across the top of the document filing, not the printed page numbers at the bottom of each page in the lower left corner of the agreement.

Turning to Plaintiff's initial and second appointment letters, which are expressly subject to the collective bargaining agreement (Docs. 7-1 & 7-3), each pertained to the specific academic year at issue (2019-20 and 2020-21 respectively). Each letter makes clear that the appointment was "a one-year position with possible annual reappointments through 2024-25 following an annual evaluation/review of teaching and student advising performance and depending on funding and availability of the position." Each letter states Plaintiff's salary for the applicable year only and his expected teaching duties for that year. On page 7 of his opposition memorandum, Plaintiff wrongly contends that the URI Defendants cite to the 2020-21 appointment letter to "deflect away" from the 2019-20 appointment letter. Actually, the URI Defendants correctly reference the 2020-21 appointment letter because it (not the initial appointment letter) applied to that academic year.

Most of all, Plaintiff's assertion that he was "appointed to teach in the Department of Political Science beginning the 2019-20 academic year through 2024-25" (Pl. memo. at 6) misreads the collective bargaining agreement and each of his annual appointment letters. These documents show that he was subject to an annual appointment process and negate his contention that he had a constitutionally-protected five-year employment term as a Faculty of Practice.

**B. To support a plausible equal protection claim, Plaintiff cannot identify his putative comparators for the first time in an opposition memorandum.**

A plaintiff asserting an Equal Protection Clause violation "must identify his putative comparators" to make out a threshold case of disparate treatment. *See Harron v. Town of Franklin*, 660 F.3d 532, 537 (1st Cir. 2011) ("At a minimum, in order to 'provide fair notice to defendants[,]'" the plaintiff must "identify his putative comparators[.]") (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F. 3d 1, 7 (1st Cir. 2011)); *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 302-03 (D. Mass. 2017) (a failure to identify a similarly situated comparator forecloses equal protection claim). As the URI Defendants argue in their initial memorandum,

Plaintiff's Complaint fails to identify any specific comparator upon whom he bases his equal protection claim.

Apparently recognizing, but refusing to acknowledge, his pleading failure, Plaintiff identifies his putative comparators for the first time on pages 12-13 of his opposition memorandum. He purports to describe statements by two University Professors – Erik Loomis and Donna Hughes – and proffers his interpretations of certain University public statements regarding comments by these professors. If Plaintiff intended to rely on these two alleged comparators in the first place, he should have pled them. Allegations asserted initially through opposition advocacy should not be equated with what should have been pled in the Complaint. Such tactics place the URI Defendants at an unfair disadvantage and contravene how the Rule 12(b)(6) process is expected to proceed.

When they were served with the Complaint and as they drafted their responsive motion, the URI Defendants were not notified of these alleged comparators. Because the Complaint is devoid of any specified comparators, Plaintiff's equal protection claim seemingly reads as an impermissible class of one theory in the public employment context. The onus should not be on the URI Defendants to have to guess the identities of any purported comparators whom Plaintiff may believe to be relevant and applicable to his equal protection claim. Plaintiff's mere pleading of his conclusory allegation that he was treated differently than white professors is not enough to pass pleading muster and demonstrate a plausible equal protection claim. While notice pleading is liberal, sufficient factual details must still be provided to support a plausibly pled equal protection claim. *See Coyne v. City of Sommerville*, 972 F.2d 440, 444 (1st Cir. 1992) (A plaintiff may not plead an equal protection claim "simply by asserting an inequity and tacking on the self-

serving conclusion that the defendant was motivated by a discriminatory animus.") (quoting *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 53 (1st Cir. 1990)).

In sum, the plausibility test of the equal protection claim must focus upon the pleading's actually stated factual allegations, not newly asserted allegations in opposition advocacy trying to save the claim. Because Plaintiff's actually-pled factual allegations fail as a matter of law, the URI Defendants' motion should be granted as to Plaintiff's equal protection claim.[4]

**C. Rhode Island law has not recognized causes of action under the Rhode Island Constitution's due process, equal protection, and free speech clauses.**

On October 21, 2021, in *Hagopian v. City of Newport*, C.A. No. 18-283-WES, 2021 WL 4742701, at *1, n. 1 (D.R.I. October 12, 2021), Judge Smith examined whether the Rhode Island Supreme Court has sanctioned a private cause of action under article 1, section 6 (search and seizure) of the Rhode Island Constitution. Particularly, Judge Smith exercised federal judicial restraint on a matter of state constitutional law:

> This Court has identified no authority in which the Rhode Island Supreme Court has sanctioned a private cause of action under article 1, section 6 of Rhode Island Constitution analogous to that established in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Instead, the Rhode Island Supreme Court has consistently refused to hold that constitutional provisions create a private cause of action without legislative action. *See Doe v. Brown Univ.*, 253 A.3d 389, 398-401 (R.I. 2021) (antidiscrimination clause of article 1, section 2 of the Rhode Island Constitution does not give rise to a private cause of action); *Bandoni v. State*, 715 A.2d 580, 587-96 (R.I. 1998) (same for article 1, section 23).

---

4 If Plaintiff believes that there is any validity to his alleged comparators – which there is not – he can seek to file an amended complaint, which he has already made clear he intends to do with other putative claims. That is, in paragraph 26 of his Complaint, Plaintiff states that, on or about April 28, 2021, he filed charges with the United States Equal Employment Opportunity Commission ("EEOC") asserting that URI violated Title VII of the Civil Rights Act of 1964. The University has not been served with a EEOC charge dated on or about April 28, 2021. Instead, URI was served with a charge dated August 2, 2021, and it has filed its responsive position paper with the EEOC. Plaintiff represents that he intends to move to amend his pleading to add Title VII racial discrimination claims as soon as he has exhausted required administrative remedies.

In his opposition, Plaintiff concedes that, as a result of the recent ruling in *Doe*, he has no private cause of action under the antidiscrimination clause of article 1, section 2 of the Rhode Island Constitution. Yet, Plaintiff maintains that he may proceed with due process and equal protection claims under section 2, as well as a free speech claim under article 1, section 21. His contention fails as a matter of law because neither the Rhode Island General Assembly nor the Rhode Island Supreme Court has expressly authorized such private causes of action under the Rhode Island Constitution.

**1. The Due Process and Equal Protection Clauses**

Article 1, section 2 of the Rhode Island Constitution contains due process, equal protection and antidiscrimination clauses enacted in 1986. Plaintiff contends that *Doe* does not impair his due process and equal protection claims. Plaintiff overlooks that the Court applied *Bandoni's* framework to article 1, section 2 in its entirety (not just the nondiscrimination clause) and concluded that the section is not self-executing:

> Article 1, section 2 articulates general principles and "the constitutional provision does not set forth rules that give those principles the force of law." *A.F. Lusi Construction, Inc. v. Rhode Island Convention Center Authority*, 934 A.2d 791, 798 (R.I. 2007). The provision does not provide any means pursuant to which those included in the provision can enjoy or protect their rights. *See Bandoni*, 715 A.2d at 588 (finding that the statute at issue there did not "provide a procedural means by which crime victims may enjoy or protect their rights"). Clearly, the provision itself does not expressly provide a private cause of action for damages. *See id*. at 589. Further, we are not persuaded by the use of the word "shall" in article I, section 2. We have reiterated that "a constitutional provision may be expressed in mandatory terms and still not be self-executing." *Id*.

If the antidiscrimination clause does not allow for a private cause of action, but the concurrently enacted due process and equal protection clauses in the same constitutional section do allow for such actions, the Rhode Island Supreme Court would have said so in *Doe*. *See also*

*Folan v. State*, 723 A.2d 287, 292 (R.I. 1999) (declining to approve a direct right of action under the Rhode Island Constitution's equal protection clause).

Plaintiff's reliance upon Judge Lagueux's ruling in *Jones v. State*, 724 F. Supp. 25, 34-35 (D.R.I. 1989), is incomplete and out of date. Respectfully, Judge Lagueux's analysis in November 1989 pre-dated by almost nine years the Rhode Island Supreme Court's July 1998 ruling in *Bandoni*. In fact, in March 1998 (five months before *Bandoni's* issuance), Judge Lagueux revisited his analysis in *Jones* based upon the passage of time, and the Court did not allow a plaintiff to proceed with a claim alleging violation of his rights guaranteed by article 1, section 2 of the Rhode Island Constitution:

> In *Jones*, this Court employed a *Bivens*-type analysis to reach the conclusion that Article 1, Section 2, created an implied right to sue a state official individually for damages resulting from an alleged violation of its provisions. [*Jones*, 724 F. Supp.] at 35-36. In view of the passage of time and the failure of the Rhode Island Supreme Court to deal with this issue, this Court elects now to revisit this matter and, thus, decide whether there is a cause of action available to this plaintiff under this case under that state constitutional provision.
> . . .
> It seems evident to this writer at this time that the Rhode Island Supreme Court, when faced with this issue, will conclude, relying on *Bivens* that there is no need to create a constitutional cause of action under the circumstances of this case.

*Eastridge v. Rhode Island College*, 996 F. Supp. 161, 169-70 (D.R.I. 1998).

Nearly a quarter century after Judge Lagueux's reflective rethinking of his analysis and with the benefit of the Rhode Island Supreme Court's constitutional law precedents established in *Bandoni* and *Doe*, it is clear that Rhode Island law has not sanctioned the private causes of action for damages that Plaintiff seeks to assert against the URI Defendants under the due process and equal protection clauses of article 1, section 2 of the Rhode Island Constitution.

**2. The Free Speech Clause**

Plaintiff wrongly claims that the Rhode Island Supreme Court's ruling in *Felkner v. Rhode Island College*, 203 A.2d 433 (R.I. 2019), sanctioned a free speech cause of action under the Rhode Island Constitution. Nothing in *Felkner's* lengthy opinion indicates that the Court applied the *Bandoni* analysis to article 2, section 21. In fact, the Court noted that the plaintiff's free speech claim sought redress under 42 U.S.C. § 1983 and Rhode Island statutory law, not through the state constitution directly. *Id*. at 447. The Court also indicated that it applied federal law principles to analyze the plaintiff's free speech claims. *Id*. at 446, n.9.

On remand in *Felkner*, the Rhode Island Superior Court recently granted summary judgment and entered a final judgment in the defendants' favor finding that the defendants were entitled to qualified immunity under the statutes at issue. Judge Susan McGuirl's analysis contains nothing indicating nor implying that the Supreme Court's ruling recognized a private cause of action under article 1, section 21. *See Felkner v. Rhode Island College,* C.A. No. PC-2007-6702, 2021 R.I. Super. LEXIS 69 (Aug. 31, 2021).[5]

**D. Plaintiff has not pled a prima facie case of defamation and, even if he has done so, the Court should determine, as a matter of law, that the URI Defendants are entitled to a qualified immunity defense.**

As the URI Defendants stated in their initial memorandum, Plaintiff cited in Count V to two allegedly defamatory statements – a January 12, 2021 letter from Provost DeHayes to Plaintiff placing him on administrative leave (with copies to Dean Riley and the Political Science Department Chair) and a January 22, 2021 memorandum from Provost DeHayes to Plaintiff's

5 Finally, Plaintiff suggests that his claims under the Rhode Island Constitution should survive Rule 12(b)(6) dismissal to allow for their further factual development. Nothing during discovery will change the legal result that Rhode Island law has not sanctioned the constitutional causes of action pled in Count IV of the Complaint.

union representative, responding to the union's request for information (with copies to a University Vice President and the Associate Vice President who manage the University's labor relations). And, as stated in the URI Defendants' initial memorandum, neither statement meets the legal standard of defamation. Now, Plaintiff states that he actually meant to allege in Count V his belief that there were a total of six allegedly defamatory statements. At least here, Plaintiff alludes to allegations that are pled elsewhere in his Complaint, rather than adding new ones as he did with his equal protection claim.

In Plaintiff's opposition, the four additional allegedly defamatory communications are the following:

- An October 27, 2020 email exchange between Dean Riley and Plaintiff regarding a student complaint;
- A December 7, 2020 email from President Dooley and Provost DeHayes responding to Plaintiff's request for a meeting;
- An April 16, 2021 letter from Provost DeHayes to Plaintiff informing him of more reports of concern raised by students and employees; and
- A May 11, 2021 letter from Provost DeHayes to Plaintiff informing him of the University's nonrenewal of his Faculty of Practice appointment for the next academic year.

In their initial memorandum, the URI Defendants have delineated the analysis that the Court should undertake to determine whether the statements, when read in their entirety and context, may support a defamation claim. The URI Defendants incorporate their prior arguments for application to the four newly identified statements, which are not defamatory.

Further, even if the Court determines that Plaintiff's allegations meet the initial hurdle for a defamation claim, there is a legal determination that it may make at the Rule 12 stage on the pleadings – that the URI Defendants have a qualified immunity defense. In *Ponticelli v. Mine Safety Appliance Co.*, 247 A.2d 303, 307-08 (R.I. 1968), the Rhode Island Supreme Court

recognized the right of employees to communicate with other employees with a qualified privilege against a defamation claim. Applying *Ponticelli* at the Rule 12 stage of a case, the Court held in *Swanson v. Speidel Corp.*, 293 A.3d 307, 309 (R.I. 1972), that a defendant's intra-company communication privilege can be recognized at the pleadings stage and applied as the law of the case going forward. Here, for reasons detailed in the URI Defendants initial memorandum and applying *Ponticelli* and *Swanson*, the Court should rule that they have a qualified privilege as the law of this case.

**E. Section 301 of the Labor Management Relations Act requires the preemption of Plaintiff's state law breach of contract claim.**

As stated in their respective memoranda, the parties agree on the standard to determine whether Section 301 of the Labor Management Relations Act ("LMRA") preempts Plaintiff's state law breach of contract claim. They disagree on the standard's application to his employment relationship with URI. The URI Defendants will not restate here all of the reasons why Plaintiff's state law contract claim is preempted, which are described on pages 22-24 of their initial memorandum.

Plaintiff wrongly contends that the Court should not review and analyze the University's collective bargaining agreement at the Rule 12(b)(6) stage. However, Plaintiff's employment with the University cannot be resolved without construing the collective bargaining agreement's provisions governing a Faculty of Practice appointment. As discussed above in response to Plaintiff's procedural due process claim, the collective bargaining agreement prescribes the duration, terms, and rights of a Faculty of Practice at the University, particularly distinguishing this annually-appointed, non-tenure track position from the other ranks of faculty within the bargaining unit. Doc. No. 7-2 at 53-54, 60.

As Plaintiff knows from his annual appointment letters for the 2019-20 and 2020-21 academic years (Doc. Nos. 7-1 & 7-2), his employment at the University was "subject to . . . the provisions of the *Collective Bargaining Agreement between the Rhode Island Council on Postsecondary Education and the URI Chapter of the American Association of University Professors*." Because the analysis of Plaintiff's state law claim is "substantially dependent" upon or "inextricably intertwined" with the collective bargaining agreement, section 301 of the LMRA preempts Plaintiff's breach of contract claim. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

Plaintiff's reliance upon the Court's Rule 12(b)(6) ruling in *Sankey v. UTGR, Inc.*, No. CV 19-634-JJM-PAS, 2020 WL 1158465, at *3 (D.R.I. Mar. 10, 2020), is misplaced. In *Sankey*, the Court concluded that it did "not have enough facts to determine whether Ms. Sankey's asserted claims of false arrest, malicious prosecution, defamation, false light, and intentional infliction of emotional distress arise from a breach of duty under the CBA." *Id*. That situation, which involved the application of the LMRA preemption analysis to state tort law claims, is distinguishable from this situation, where Plaintiff alleges a breach of his contractual employment relationship at URI and the University's collective bargaining agreement with its faculty prescribes controlling terms of the Faculty of Practice position.

**F. Plaintiff's claim under the Rhode Island Whistleblowers' Protection Act fails to state any protected conduct as defined under the Rhode Island statute.**

As conceded in his opposition, Plaintiff has wrongly named President Dooley, Provost DeHayes and Dean Riley individually as defendants in his Rhode Island Whistleblowers' Protection Act ("RIWPA") claim. Because there is no individual liability under the statute, the three individually named defendants must be dismissed from this count, which can be pled only against URI as the employer.

URI relies upon its arguments in its initial memorandum, analyzing the statute's requirements and submitting that Plaintiff has failed to state a plausible claim. URI's analysis is hardly "hypertechnical," as mischaracterized by Plaintiff. URI maintains that Plaintiff's commentary on URI's diversity record does not qualify as a "protected activity" under the RIWPA's statutory language and intent.

Finally, URI responds to Plaintiff's twisted citations in seeking to support his RIWPA claim. *Ruffino v. State Street Bank and Trust Co*., 908 F. Supp. 1019 (D. Mass 1995), does not address RIWPA or even apply Rhode Island law. Trying to shield this fact, Plaintiff suggests that *Ruffino* applies by just partially quoting language addressing a Title VII retaliation claim, which is inapposite.[6]

Plaintiff also relies upon *Rein v. ESS Group, Inc.*, 184 A.3d 695 (R.I. 2018), to contend that he is not obligated to cite to a specific statute to support his whistleblower claim. The Rhode Island Supreme Court allowed the whistleblower claim of a former employee and shareholder to proceed against a defendant company because the plaintiff alleged that the company had engaged in common law fraud through false statements in its corporate minutes. *Id*. at 702. Applying RIWPA's requirements, an employee's whistleblowing of his employer's common law fraud violations is wholly and legally distinct from Plaintiff's commentary about diversity at URI.

[6] The full quotation from *Ruffino* reads as follows: "It is well established that where an employee complains of alleged sexual harassment and sex discrimination under Title VII and he or she reasonably believes his or her allegations have some foundation, the employee has satisfied the first element of a prima facie case [of Title VII retaliation]." 908 F. Supp. 3d at 1044 (citations omitted). This language has no impact on the RIWPA claim at issue here.

## III. CONCLUSION

For the reasons stated in the URI Defendants' initial memorandum and this reply memorandum, the URI Defendants request that the Court dismiss Counts II-VII of Plaintiff's Complaint for his failure to state plausible claims upon which relief can be granted.

Defendants,

By Their Attorney,

/s/ Steven M. Richard
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1020
Fax: 401-454-1030
Email: srichard@nixonpeabody.com
Dated: October 25, 2021

**CERTIFICATE OF SERVICE**

I certify that, on the 25th day of October, 2021, this reply memorandum was filed and served upon counsel of record via the Court's CM/ECF system.

/s/ Steven M. Richard