## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

LOUIS KWAME FOSU,
    Plaintiff,

    v.

THE UNIVERSITY OF RHODE
ISLAND; THE UNIVERSITY OF
RHODE ISLAND BOARD OF
TRUSTEES; DAVID M. DOOLEY,
PRESIDENT; DONALD DEHAYES,
Provost and Vice President of Academic
Affairs; and JEANNETTE E. RILEY,
Dean, College of Arts and Sciences, in
their individual and official capacities,
    Defendants.

C.A. No. 21-279-JJM-PAS

### MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Professor Louis Kwame Fosu has sued The University of Rhode Island ("URI")
and URI's Board of Trustees, URI President David M. Dooley, URI Vice President
Donald DeHayes, and URI Dean Jeannette E. Riley, individually and in their official
capacities as agents and employees of URI, alleging that Defendants terminated his
employment with URI in violation of his constitutional rights. Defendants move to
dismiss Counts II[1] through VII of Mr. Fosu's Complaint under Federal Rule of
Procedure 12(b)(6) for failure to state a claim. ECF No. 6. For the following reasons
the Court DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss.

---

[1] Defendants do not seek dismissal of Count I, Violation of Plaintiff's First
Amendment Right to Freedom of Speech – Retaliation, under 42 U.S.C. § 1983.

## I.   BACKGROUND

The Court briefly summarizes the relevant facts in the light most favorable to the non-moving party, Mr. Fosu. *Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 140 (1st Cir. 2002).

In the Fall of 2018, URI recruited Mr. Fosu as a Visiting Professor for URI's Honors Program.   Mr. Fosu taught classes in leadership and political science and assisted students in their advocacy pursuits.   ECF No. 1 at 9, ¶ 44.   Mr. Fosu's performance in this position motivated URI to hire him as a "Faculty of Practice" in its Political Science Department.   Mr. Fosu accepted this position in part because of URI's stated commitment to diversity.   He received and signed an offer letter dated July 1, 2019 ("Offer Letter").   ECF No. 1-2.   The Offer Letter stated that URI appointed Mr. Fosu for the 2019-2020 academic year with possible yearly reappointments through 2024-2025, "following an annual evaluation/review of teaching and student advising performance and depending on funding and availability of the position." *Id.* at 1.   Additionally, the terms of Mr. Fosu's appointment were also subject to the "University Manual" and the terms of URI's Collective Bargaining Agreement ("CBA"). *Id.*

After his first year of service, URI renewed Mr. Fosu's contract for the 2020-2021 academic year.   In the Fall of 2020, Mr. Fosu began teaching a class on political advocacy.   In this class, he and his students created a nonprofit institution called the Diversity Think Tank ("DTT") to enact policy changes at URI and in the surrounding community.   Students and faculty joined the DTT in support of its commitment to

2

address systematic racism.  Mr. Fosu and the DTT members electronically published a "Declaration of Diversity" ("Declaration").  Mr. Fosu sent the Declaration to URI officials including Mr. Dooley, Mr. DeHayes, Ms. Riley, and URI's Board of Trustees. The Declaration expressed the authors' opinions on systemic racism, URI's lack of diversity, and racial inequity.

Mr. Fosu asserts that this is when Defendants began to retaliate against him for his advocacy and speech.  The morning after Mr. Fosu sent the Declaration to URI officials, he received an email from Ms. Riley concerning a student complaint about his email communications.  When he requested a meeting with her to discuss this complaint, he was told that a meeting was unnecessary.  Mr. Fosu asked Mr. Dooley and Mr. DeHayes to sit in on his class but they declined, noting that they believed the opinions in the Declaration were his alone and that they "were not willing to participate in this exercise which primarily appears to be designed to promote your agenda" in the class.  ECF No. 7-5 at 2.

On January 11, 2021, without prior notice to Mr. Fosu, Mr. DeHayes informed him that URI had placed him on administrative leave, claiming that he was hostile towards his students and demeaned his colleagues.  URI did not give him an opportunity to rebut any of these complaints or allegations.  No other professors accused of serious misconduct or who have made provocative public statement had been punished with administrative leave. Three months after Mr. Fosu was placed on administrative leave, URI began an investigation into Mr. Fosu's conduct.  He

links this investigation with Defendants' retaliation and believes it was pretextual and used to conceal Defendants' retaliation.

On May 11, 2021, URI terminated Mr. Fosu. He alleges that Defendants' conduct has damaged his career, his employment prospects, and his record as a political science teacher, making it much more difficult for him to obtain gainful employment in this field. Mr. Fosu filed this suit, seeking declaratory, injunctive, and monetary relief.

Defendants move to dismiss Counts II through VII of the Complaint, which Mr. Fosu opposes. Following briefing on the motion, Mr. Fosu has consented to the dismissal of Count IV (the anti-discrimination clause of Article 1, Section 2, of the Rhode Island Constitution). Mr. Fosu also consents to the dismissal of Count VII against the URI officials in their individual capacities only.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

### A.   Count II – § 1983 Due Process Claim

In Count II of the Complaint, Mr. Fosu alleges that Defendants violated his Fourteenth Amendment right to procedural due process by not affording him a hearing or an opportunity to be heard before he was put on administrative leave or before he was terminated. In asserting his right to due process, Mr. Fosu asserts that he had a constitutionally protected property interest in his continued employment. URI counters that Mr. Fosu had no protected property interest in continued employment because his contract and the CBA are clear that his contract was for a one-year term that was renewable.

5

To state a procedural due process claim, a plaintiff must demonstrate "[1] 'a property interest as defined by state law' and [2] that the defendants deprived [him] of this property interest without constitutionally adequate process." *García-Rubiera v. Fortuño*, 665 F.3d 261, 270 (1st Cir. 2011) (quoting *SFW Arecibo, Ltd. v. Rodríguez*, 415 F.3d 135, 139 (1st Cir. 2005)). With respect to the first prong, a plaintiff may have a protected property interest in continued employment if "he has a reasonable expectation, arising out of a statute policy, rule, or contract, that he will continue to be employed." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1st Cir. 2002).

In this case, Mr. Fosu worked under a contract with URI. The Court looks to the terms of his Offer Letter and the CBA to determine whether his expectation in continued employment was reasonable as they both define the terms of Mr. Fosu's employment as a Faculty of Practice.[2]  The Offer Letter reads, "[the Faculty of Practice appointment] is a one-year position with possible annual reappointments through 2024-2025 following an annual evaluation/review of teaching and student advising performance and depending on funding and availability of the position." ECF No. 1-2.  The CBA states, in relevant part, that "[a]ppointment to Faculty of

---

[2] The Court considers the CBA in its discussion because it is sufficiently referenced in Mr. Fosu's Complaint. *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (holding that documents central to a plaintiff's claim, whose authenticity is not challenged, merge into the pleadings and can be considered by the court at the motion to dismiss stage). The Court also looks to the Offer Letter because it states that Mr. Fosu's appointment was subject to the University Manual and the CBA. ECF No. 1-2. These documents shape the terms and duration of Mr. Fosu's continued employment and are relevant to Defendants' motion.

Practice is on an *annual basis* for a period up to five years maximum." ECF No. 7-2 at 49 (emphasis added). It continues, "[t]he awarding of an appointment or subsequent reappointments by the University implies no commitment beyond the terms of appointment." *Id.* at 56.

When read together, the controlling terms of Mr. Fosu's employment with URI indicate that the Faculty of Practice position is annual. The Offer Letter states that Mr. Fosu's reappointment is "possible," but it is subject to circumstances beyond his control, such as whether URI has the funding for the position. The CBA forecloses any chance that URI could promise Mr. Fosu that his contract would be renewed. Ultimately, Mr. Fosu's employment at URI beyond one year was possible, but it was not guaranteed in a way such that he had a reasonable expectation of continued employment. Therefore, Mr. Fosu has not pled a property interest in his employment and URI did not violate his rights by failing to give him a hearing before placing him on administrative leave and terminating his position. Accordingly, the Court GRANTS the Motion to Dismiss as to COUNT II.

### B.    Count III – 42 U.S.C § 1983 Equal Protection Claim

In Count III, Mr. Fosu claims Defendants violated his Fourteenth Amendment right to equal protection. To survive a motion to dismiss this claim, he must plead that (1) he was treated differently than others similarly situated, and (2) that the motivation behind the different treatment was based on race. *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995). In support of this claim, Mr. Fosu alleges that Defendants treated him differently than similarly situated URI professors because

he is a Black man.    Defendants argue that the Complaint fails to include the necessary specificity regarding the persons to whom Mr. Fosu was similarly situated.

"The determination as to whether individuals are 'similarly situated' for equal protection purposes is an amorphous one.    The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated . . . . Exact correlation is neither likely nor necessary. . . .'" *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004) (quoting *Barrington Cove Ltd. P'ship v. R. I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) (citation omitted)).    "[T]he 'relevant aspects' are those factual elements which determine whether the reasoned analogy supports, or demands, a like result." *Aponte-Ramos v. Alverez-Rubio*, 783 F.3d 905, 909 (1st Cir. 2015) (quoting *Barrington Cove*, 246 F.3d at 8).

The Court finds that the Complaint is specific enough in its allegations of differential treatment.    Mr. Fosu alleges that he was placed on administrative leave and ultimately terminated because he made provocative public remarks against URI's alleged practice of discrimination.    ECF No. 1 at ¶¶ 14-16 & 53-56.    He alleges that "similarly situated professors at URI" have made "provocative public remarks" without being placed on administrative leave or denied a hearing.    ECF No. 1 at ¶¶ 73 & 108.    He alleges that he was treated differently than his colleagues who also spoke out against URI's practices but were not placed on administrative leave like Mr. Fosu. *Id.* The allegations in the Complaint show the analogy between Mr. Fosu and similar URI professors who have made provocative public remarks.    Because Mr. Fosu

8

establishes his comparators and specifies URI's differential treatment, he has satisfied the first element of an equal protection claim.[3]

Since Mr. Fosu has pled his protected status, the Complaint need only allege that his differential treatment was "based on impermissible considerations such as race." *Rubinovitz*, 60 F.3d at 910. Mr. Fosu points to the lack of diversity among URI's faculty, its student body, and its leadership. ECF No. 1 at ¶¶ 8-11. Mr. Fosu and the DTT made URI aware of their accusations that URI engaged in systemic racism in the hiring and treatment of African American Professors. *Id.* at ¶¶ 55-56. Taking these allegations as true, the Court infers that race was an impermissible consideration in Defendant's decision to treat Mr. Fosu differently. Accordingly, the Court DENIES the Motion to Dismiss as to COUNT III.

## C.    Count IV – Rhode Island State Constitution Claims

In Count IV of the Complaint, Mr. Fosu claims Defendants violated his rights under Article 1, Sections 2 and 21 of the Rhode Island Constitution. Defendants argue in their motion that this Court should refrain from recognizing a private cause of action under the Rhode Island Constitution because Rhode Island's General Assembly has not done so.

---

[3] Defendants argue that Mr. Fosu has effectively pled a class-of-one theory because he failed to specify his membership in a protected class. At the outset of his Complaint, he pleads that he is a Black man, and that his race was a motivating factor for Defendant's violation of the law. ECF No. 1 at ¶ 3. This allegation puts him squarely within a protected class. As such, the Court rejects the argument that Mr. Fosu is relying on a class-of-one theory.

Looking to and deferring to Rhode Island state law, the Court finds that Mr. Fosu does not have a cause of action for equal protection and due process violations under Article 1, Section 2 of the Rhode Island Constitution.[4] The Rhode Island Supreme Court has held that because "the [Rhode Island Fair Employment Practices Act] and the [Rhode Island Civil Rights Act] provide comprehensive remedies[5] for employer discrimination, it is unnecessary to create or recognize a direct remedy pursuant to Article 1, Section 2, of the Rhode Island Constitution." *Folan v. State Dep't of Children, Youth, and Families*, 723 A.2d 287, 292 (R.I. 1999). Mr. Fosu's state due process and equal protection claims are more comprehensively redressed by the FEPA and RICRA. Mr. Fosu's claim that his right to freedom of speech under Article 1, Section 21 was violated cannot stand for the same reason. *Felkner v. R. I. Coll.*, 203 A.3d 433, 447 (R.I. 2019) (noting that plaintiff's redress for a violation of Art. 1, § 21 was through RICRA rather than a private cause of action under the R.I. Constitution). Ultimately, the state statutes provide an adequate remedy for Mr. Fosu's claims and the Court declines to recognize that Mr. Fosu has

---

[4] Defendants correctly note that federal courts are precluded from extending the reach of state law. *Doe v. Trs. of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019) (*citing Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)). Moreover, "a state decision resting on an adequate foundation of state substantive law is immune from review in federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).

[5] The Rhode Island Fair Employment Practices Act ("FEPA") was enacted to protect a private citizen's right to employment without discrimination. It outlines prohibited employment practices and provides a means for redress through the Rhode Island Commission for Human Rights and the Superior Court. *See* R.I. Gen. Laws § 28-5-1 *et seq.* Likewise, the Rhode Island Civil Rights Act of 1990 ("RICRA") is analogous to Title VII in its protection a private citizen's right to equal protection and due process, and specifically creates a private cause of action for citizens whose rights have been violated. *See* R.I. Gen. Laws § 42-112-1 *et seq.*

a private cause of action under Article 1, Sections 2 and/or 21 of the Rhode Island Constitution Accordingly, the Court GRANTS the Motion to Dismiss as to COUNT IV.

### D.   Count V – Defamation

In his defamation claim, Mr. Fosu claims Mr. Dooley and Mr. DeHayes portrayed him as hostile, abusive, misogynistic, and coercive in several correspondences, defaming him and harming his reputation.   Defendants argue that the Complaint fails to identify any defamatory statements.

To state a defamation claim, a plaintiff must allege "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence; and (4) damages, unless the statement is actionable irrespective of special harm." *Nassa v. Hook–SupeRx, Inc.*, 790 A.2d 368, 373 n.10 (R.I. 2002).   Under Rhode Island law, a statement is considered defamatory when it is "false and malicious, imputing conduct which injuriously affects a man['s] reputation, or which tends to degrade him in society or bring him into public hatred and contempt . . . ." *Reid v. Providence Journal Co.*, 37 A. 637, 638 (R.I. 1897).   A claim must include factual allegations that "the person…to whom the communication was published reasonably understood" the communication to be defamatory. *Marcil v. Kells*, 936 A. 2d 208, 213 (R.I. 2007).

Together with this understanding of defamation, the Rhode Island Supreme Court has adopted the Restatement's understanding of defamation *per se*. *Id.* According to the Restatement (Second) of Torts, statements are actionable *per se*

when they are particularly harmful to "one engaged in his trade or profession." Restatement (Second) of Torts § 573 cmt. e (1977). General statements that would harm all persons do not amount to defamation *per se* unless the quality harmed is valuable to a plaintiff's trade. *Id.* Ultimately, statements that assert "improper conduct, lack of skill, or integrity...that...is calculated to cause injury to one in his profession," amount to defamation. *Marcil*, 936 A. 2d at 213.

### 1. Defendants' Statements

Mr. Fosu identifies three pieces of correspondence that, in his view, contain defamatory statements: the December 7th email Mr. Dooley and Mr. DeHayes sent, and the January 12th letter and January 22nd memorandum Mr. DeHayes sent. Defendants argue that these do not contain defamatory statements, but merely gave Mr. Fosu and his union representative notice of the reasons URI was placing him on administrative leave.

As an initial matter, the Court is not persuaded that URI's statements are not defamatory because they were intended to give Mr. Fosu notice of his administrative leave. A defamation action can be supported by "fault amounting to at least negligence," which makes URI's intentions irrelevant to the determination of this issue. *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 751 (R.I. 2004) (quoting *Cullin v. Auclair*, 809 A.2d 1107, 1110 (R.I. 2002) (per curiam)).

Moving on to the statements themselves, the December 7th email, January 12th letter, and the January 22nd memorandum, when read in context, outline URI's "serious concerns" regarding allegations that Mr. Fosu intimidated, exploited, and

coerced his students, and that his interactions with URI faculty have been hostile and "non-collegial." ECF No. 1 at ¶ 77. Mr. Fosu alleges that these comments directly disparage his ability to educate students and work with his colleagues, which are qualities that are valuable to any professor. He also alleges that he personally found the statements "shocking and upsetting." *Id.* There is no question that the assertions leveled against Mr. Fosu are harmful particularly to his profession as an educator. The effect of these statements made it difficult for him to do his job; Mr. Fosu noticed that "several faculty and students suddenly began disassociating from the DTT and its advocacy efforts."[6] *Id.* at ¶ 76. As such, the Court finds that Mr. Fosu's invocation of Mr. Dooley's and Mr. DeHayes's correspondence in his Complaint sufficiently alleges a claim for defamation *per se.* Thus, Mr. Fosu has sufficiently alleged that Mr. Dooley's and Mr. DeHayes's statements are defamatory.

## 2. Allegations of Bad Faith Vitiate any Qualified Privilege

Defendants argue that the Court should dismiss Mr. Fosu's defamation claim because the defamatory statements were published only to URI officials and a URI-affiliated union representative. Based on this limited publication, Defendants assert

---

[6] Mr. Fosu argues that the statements act as evidence of both the harm to Mr. Fosu's reputation and Defendants' publication of the defamatory statements. The Court declines to make that leap, however, because there is no evidence that the defamatory statements were published to URI students. While the Court is duty bound to resolve all *reasonable* inferences in favor of the Mr. Fosu, *Haley,* 657 F. Supp at 46, the breadth of these inferences is not without limit. Accordingly, the Court finds that Mr. Fosu has sufficiently pled that Defendants' statements were defamatory. As for Defendants' alleged publication, the Court will resolve the issue in more detail *supra.*

that the communications remained within an intra-corporate privilege and are not publications for the purposes of a defamation claim.

In Rhode Island, an otherwise defamatory statement is protected by a qualified privilege[7] when "'the publisher acting in good faith correctly or reasonably believes that...to speak out is necessary to protect his own interests, or those of a third person.'" *Ims v. Town of Portsmouth*, 32 A.3d 914, 930 (R.I. 2011) (quoting *Ponticelli v. Mine Safety Appliance Co.*, 247 A. 2d 303, 305-06 (R.I. 1968)). However, unlike an absolute privilege, a qualified privilege can be lost when "the alleged defamatory statement is the product of ill will or malice." *Id.*

Here, the Court need not address whether Defendants' communication fell within an intra-corporate privilege because, even if it had, the Court finds that Mr. Fosu properly alleges that Defendants acted with malice. He has specifically and plausibly alleged that the statements from Mr. Dooley and Mr. DeHayes were part of a malicious campaign to destroy his reputation in retaliation for speaking out against URI. ECF No. 1 at ¶¶ 7 & 116. Therefore, taking his allegations as true, the defamatory statements that Mr. Fosu raises in his Complaint are actionable. Accordingly, the Court DENIES the Motion to Dismiss as to COUNT V.

---

[7] In their motion, Defendants argue that this Court should recognize an intra-corporate privilege to protect otherwise defamatory statements shared between administrators who have a legitimate need for the information. However, the Court declines to reach this issue because Mr. Fosu's allegations of bad-faith and malice will result in the same conclusion described *supra*.

### E.    Count VI – Breach of Contract

In Count VI of the Complaint, Mr. Fosu alleges that URI breached its contract with him.    He claims that his employment contract with URI provided for reappointments subject to an annual review, and that URI breached that contract when it terminated him after he received a positive annual review. *Id.* at ¶¶ 120-121. URI argues that the Labor Management Relations Act ("LMRA") preempts Mr. Fosu's state law claim for breach of contract because the terms of his employment contract are "inexorably intertwined" with provisions of the CBA. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985).

Section 301 of the LMRA "preempts a state law claim when 'the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'" *Haggins v. Verizon New England, Inc.,* 648 F.3d 50, 54-55 (1st Cir. 2011) (quoting *Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir. 1997)).    A state law contract claim may depend on the provisions of a CBA when the resolution of the claim requires an interpretation of the collective bargaining agreement.

As noted above, Mr. Fosu's employment contract with URI expressly states that it is subject to the CBA.    The CBA outlines the terms and rights of a Faculty of Practice at URI, which includes the provision that "Faculty of Practice shall be reviewed annually." ECF. No. 7-2 at 53-54.  Mr. Fosu's breach of contract claim rests on the fact that URI terminated him even though he received a favorable review from his supervisor, Mr. Marc Hutchinson, after he observed his class and evaluated his

performance.  ECF No. 1 at ¶¶ 61-62 & 120.  However, to determine whether Mr. Hutchinson's evaluation amounts to the annual review referenced in the CBA that URI promised Mr. Fosu requires an interpretation of the CBA.  Therefore, because the Court concludes that one or more CBA provisions will require interpretation to determine the outcome of the breach of contract claim, Section 301 of the LMRA preempts Count VI.  Accordingly, the Court GRANTS the Motion to Dismiss as to Count VI.

### F.    Count VII – Rhode Island Whistleblowers' Protection Act

In Count VII of the Complaint, Mr. Fosu claims that URI violated the Rhode Island Whistle Blower's Protection Act ("RIWPA").  In support, he alleges that URI subjected him to adverse employment action because he accused URI of racial discrimination.[8]  To state a claim under RIWPA, a plaintiff must show that he engaged in protected whistleblowing conduct as defined in the statute.  *Casey v. Manni*, 449 F. Supp. 3d 1, 3 (D.R.I. 2020).  RIWPA defines protected conduct as when an employee "reports verbally or in writing to the employer…[about] a violation…of a law or regulation or rule promulgated under the laws of this state…or the United States."  R.I. Gen. Laws § 28-50-3(4).

Defendants argue that the Court should dismiss Count VII because Mr. Fosu did not allege that he reported to URI the specific law, regulation, or rule it violated. The Court disagrees based on its own review of the Complaint.  Throughout his

---

[8] As noted above, Mr. Fosu has stipulated that Count VII will be dismissed against the named URI officials in their individual capacities.

Complaint, Mr. Fosu alleges that URI engaged in race-based discrimination, and he reported this conduct to URI.  Moreover, Mr. Fosu specifically pleads that he reported URI's engagement in systematic racism in "the hiring, treatment, and promotion of African Americans" to university officials.  ECF No. 1 at ¶ 56.  The mere fact that he did not cite to a particular statute does not doom his claim at this stage.  Ultimately, the Complaint sufficiently alleges that Mr. Fosu's conduct is protected under R.I. Gen. Laws § 28-50-3(4).  Accordingly, the Court DENIES the Motion to Dismiss as to Count VII.

## IV.   CONCLUSION

For all these reasons, the Court DENIES Defendants' Motion to Dismiss as to COUNTS III, V, and VII and GRANTS Defendants' Motion to Dismiss COUNTS II, IV, and VI.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

March 14, 2022