## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

LOUIS KWAME FOSU,

*Plaintiff*

vs.

UNIVERSITY OF RHODE ISLAND BOARD OF TRUSTEES-MARGO COOK, DAVID M. DOOLEY, PRESIDENT, THE UNIVERSITY OF RHODE ISLAND, DONALD DEHAYES, PROVOST AND VICE PRESIDENT FOR ACADEMIC AFFAIRS, AND JEANNETTE E. RILEY, DEAN, COLLEGE OF ARTS & SCIENCES, in their individual and official capacities,

*Defendants*

1:21-cv-00279-SJM-AKJ

And

C.A. No. 21-00279-JJM-PAS

## MOTION FOR RECUSAL AND DISQUALIFICATION OF

## JUDGE STEVEN McAULIFFE

(Pursuant to 28 U.S.C. §§ 144 AND 455)

## I. INTRODUCTION

Plaintiff Louis Kwame Fosu, proceeding pro se, respectfully moves for the recusal

and disqualification of Judge Steven J. McAuliffe from all further proceedings in

1

this case, pursuant to 28 U.S.C. §§ 144 and 455, on the grounds that the cumulative pattern of this Court's conduct, procedural decisions, and dispositive rulings, viewed objectively, creates an appearance of bias and partiality sufficient to cause a reasonable, fully informed observer to question this Court's impartiality. This motion is not based on any single adverse ruling. It is based on a cumulative pattern of procedural conduct that, taken together, has systematically deprived Plaintiff of meaningful due process, consistently advantaged the Defendants, and created circumstances in which a fair adjudication on the merits of this case has become impossible.

The Supreme Court has held that "a fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). It has further emphasized that "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). And due process requires recusal where, under objective circumstances, "the probability of actual bias" is "too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872, 877, 884 (2009).

Plaintiff Prof. Louis Kwame Fosu is an astute and erudite subject-matter expert who clearly recognizes the systemic injustices embedded and normalized within Rhode Island. Indeed, the University of Rhode Island hired Plaintiff Prof. Louis Kwame Fosu as a Professor of Practice to design, develop, and teach the following

courses as part of his faculty responsibilities at the University of Rhode Island: (1) Leadership for Social Change (HDF 414), (2) Human Rights, Social Justice Advocacy & Civic Engagement for a More Equitable Society (HPR 224G); (3) U.S. Constitution, and the Supreme Court (PSC 371); (4) Nonprofit Management, Administration and Ethics (PSC 582); (5) American Government Examining Institutional Power, Checks & Balances (PSC 312); (6) United Nations Sustainable Development Goal 4 (GCH-l0l Honors Program); and (7) Establishing Structural Diversity in Institutions: Civil Rights Policy in Practice (HPR 401). As Education Director of the Diversity Think Tank, Fosu continues to teach and hold free workshops on the U.S. Constitution and civil rights policy for the public, students, and employees at URI who need help bringing the law closer to justice.

Since being hired at the University of Rhode Island (URI)—and increasingly after the murder of George Floyd in 2020—Professor Fosu received a flood of complaints from students, student leaders, staff, and faculty concerning URI's employment practices, constitutional-rights violations, and broader institutional failures. In response, Professor Fosu engaged in persistent civil-rights advocacy with student leaders and faculty members, using the Diversity Think Tank as a vehicle to demand institutional change. That advocacy helped force URI to finally adopt a formal nondiscrimination policy in 2021 (see: https://diversitythinktank.org/wp-content/uploads/2024/10/URI-Procedures-for-Policy-on-NonDiscrimination.pdf).

3

After adopting its nondiscrimination policy in 2021, URI violated the very policy it had been forced to adopt by Fosu when it terminated Professor Fosu's employment. The blatant retaliation and irony is profound. It was as if *Brown v. Board of Education*, 347 U.S. 483 (1954), had bypassed the University of Rhode Island entirely, leaving Plaintiff to compel URI—an institution founded in 1892, before Plessy v. Ferguson, 163 U.S. 537 (1896)—to confront constitutional principles it should have embraced long ago. Professor Fosu's courageous advocacy helped force URI into belated compliance with modern constitutional-rights norms, only for URI to retaliate against him for demanding that those principles be honored in practice. This is the lived experience of Black and Brown people in Rhode Island who are not aligned with the Democratic Party—a political hegemony whose officials protect URI (Rhode Island's flagship public university), despite its longstanding pattern of rights violations, and shield its legal counsel from accountability.

## II. STATUTORY GROUNDS

28 U.S.C. § 455(a) provides that any judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

28 U.S.C. § 144 provides that a party may seek recusal upon a timely and sufficient affidavit stating facts and reasons for belief that the judge has a personal bias or prejudice either against the party or in favor of an adverse party.

### III. LEGAL STANDARD

Under § 455(a), the relevant inquiry "is not the reality of bias or prejudice, but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). The standard is objective: whether a reasonable person, fully informed of the relevant facts, would question the judge's impartiality. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61 (1988); see also *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007).

The Supreme Court has recognized that adverse rulings alone generally do not require recusal. Judicial rulings, opinions, or case-management decisions formed during proceedings may support recusal only when they display "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Thus, Plaintiff does not rely on adverse rulings alone, but on the cumulative procedural record and surrounding circumstances, which Plaintiff contends would cause a reasonable observer to question whether fair judgment remains possible.

Litigants can move for trial judges to recuse themselves on grounds of partiality or the appearance of partiality. Improper denial of these motions can deprive citizens of their right to a "neutral and detached judge," and diminish public trust in the judicial system.

The Constitution itself provides an independent basis for recusal where the probability of actual bias is constitutionally intolerable. In *Caperton*, the Supreme Court held that due process required recusal where, based on objective and reasonable perceptions, a person with a personal stake in the case had a "significant and disproportionate influence in placing the judge on the case." 556 U.S. 868, 884 (2009). Although *Caperton* arose in the judicial-election context, its core principle is that due process forbids adjudication where objective circumstances create a serious risk of actual bias. Here, Plaintiff has submitted substantial **documentary primary evidence which proves** that he was falsely accused by URI to cover up the University of Rhode Island leadership's violations of law—a stitch-up in which material facts were misrepresented throughout this litigation. These are not speculative allegations. The original primary documentary evidence is part of the Rhode Island federal court record and is available for review. **Yet Plaintiff has never received a hearing on that primary evidence**. Instead, motions supported by exculpatory documents have been unjustifiably sealed, ignored, or procedurally bypassed,  **while Plaintiff has been dehumanized and treated with racial animus in court while being portrayed as vexatious,**

6

**misogynistic, and "scurrilous" for attempting to expose the record**. This is not ordinary litigation friction; it is the dehumanization of a constitutional-rights plaintiff whose primary evidence has still not been confronted on the merits. The Rhode Island court's failure to meaningfully consider, address, or even acknowledge such evidence—especially where that evidence goes directly to falsity, retaliation, discrimination and alleged fraud upon the court—would cause a reasonable observer to question whether Plaintiff is receiving neutral adjudication.

At minimum, the continued refusal to engage the primary evidence creates the appearance of partiality and deprives me of the meaningful opportunity to be heard as required by due process, and I can confidently state since the Magna Carta. That is not a technical defect; **it strikes at the core of due process and rule of law**— principles rooted in Magna Carta to **protect us from abuse of power**, and carried forward into the American constitutional guarantee that no person may be deprived of rights without fair process. **These are the constitutional principles I teach my students, and it is profoundly disappointing that I must now teach them in a court of law.** This URI experience is THE greatest disappointment of my life, and it has shattered my faith in people and institutions that call themselves "progressive" and "liberal" while failing to practice the constitutional values they publicly profess.

7

## IV. PROCEDURAL HISTORY

Plaintiff sets forth the following chronological record of proceedings since the recusal of Chief Judge McConnell. Each fact is supported by a referenced exhibit.

**October 8, 2025:** Plaintiff filed a motion for recusal and disqualification of Chief Judge John J. McConnell pursuant to 28 U.S.C. §§ 144 and 455, supported by a sworn affidavit and detailed factual record. (Exhibit 1)

**October 10, 2025:** Chief Judge McConnell recused himself. Between October 10 and October 16, 2025, all judges on the Rhode Island federal bench recused from Plaintiff's case. The case was subsequently assigned to Judge Steven J. McAuliffe of the District of New Hampshire, sitting by designation in the District of Rhode Island. (Exhibit 2)

**January 27, 2026:** Judge McAuliffe entered an order closing Plaintiff's case without prior notice to Plaintiff and without a hearing. In the same order, all of Plaintiff's pending motions were denied. No status conference had been held. No opportunity to be heard was provided. (Exhibit 3)

**February 20, 2026:** Plaintiff filed a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e), or in the alternative, for Relief from Judgment under Fed.

R. Civ. P. 60(b), seeking to reopen and reinstate the case. Plaintiff simultaneously filed a Notice of Appeal to the First Circuit. (Exhibit 4)

**March 5, 2026:** Plaintiff filed a reply memorandum in response to Defendants' opposition to reopening. (Exhibit 5)

**March 13-April 10, 2026:** Plaintiff filed and resubmitted a motion to proceed in forma pauperis in order to obtain transcripts required by the First Circuit for his appeal. As of the date of this motion, no ruling has been entered on Plaintiff's IFP application.

**April 17, 2026:** Judge McAuliffe granted in part Plaintiff's Motion to Alter or Amend Judgment and reinstated the case. The Court ordered Plaintiff to, on or before May 29, 2026, either: (a) confirm his intent to proceed pro se; (b) arrange for counsel to enter an appearance; or (c) move for voluntary dismissal. (Exhibit 6)

**April 22-May 5, 2026:** Plaintiff attempted to obtain transcripts and communicated with court reporters and his First Circuit case manager. (Exhibits 7, 8, 9)

**May 11, 2026:** Plaintiff received a separate order in his case against Nixon Peabody (Case No. 1:25-cv-00691) setting the same May 29, 2026 deadline for a response to a

motion to dismiss. Both deadlines in two separate cases were set for the same day

for a pro se litigant. (Exhibit 10)

**May 21, 2026:** Plaintiff filed a Motion for Clarification of the Court's April 17, 2026

Order, seeking clarification of his pro se status and the Court's procedural

expectations. (Exhibit 11)

**May 22, 2026:** Plaintiff filed his Status Report with the First Circuit Court of

Appeals. (Exhibit 12)

**May 29, 2026:** The Court denied Plaintiff's Motion for Clarification and

simultaneously ordered that summary judgment motions are due on or before July

1, 2026, with Plaintiff's response due 30 days thereafter. This order was entered

before Plaintiff's time to comply with the Court's April 17, 2026 options had been

fully addressed, and before Plaintiff's IFP motion had been ruled upon. The Court

effectively decided Plaintiff's pro se status for him, without waiting for Plaintiff's

response as the April 17, 2026 McAulife ruling ordered.

**June 12, 2026:** Plaintiff filed his Objection to Nixon Peabody's Motion to Dismiss,

attaching exculpatory documentary evidence that the Court has had before it and

that goes directly to falsity, retaliation, and deliberate misrepresentations by URI

and Nixon Peabody. Plaintiff submits that the Court's repeated failure to

10

meaningfully address this primary evidence and continuous "misapprehensions" propelling a continued movement toward dismissal without meaningful engagement with this primary evidence creates a serious appearance-of-justice problem under 28 U.S.C. § 455(a). Again, I inquired about the basis for the mass recusal of all Rhode Island federal judges. (Exhibit 13).

**June 16, 2026:** Plaintiff filed a Motion for Leave to File Sur-Reply, again supported by exhibits containing exculpatory documentary evidence that directly bears on falsity, misrepresentation, retaliation, and Plaintiff's claim that the accusations against him were baseless. (Exhibit 14).

**June 17, 2026:** June 17, 2026: Plaintiff filed a formal criminal referral with the United States Department of Justice and the Federal Bureau of Investigation regarding Steven Richard and Nixon Peabody. Plaintiff filed the referral because the alleged misconduct, misrepresentations, and institutional cover-up are too extensive for a pro se litigant to meaningfully investigate or overcome without federal intervention. (Exhibit 15).

## V. FACTUAL BASIS FOR RECUSAL

### A. Case Closed Without Notice or Hearing

On January 27, 2026, this Court entered an order closing Plaintiff's civil rights case, denying all pending motions, and entering judgment, without providing Plaintiff any prior notice that dismissal was imminent and without holding any hearing. (Exhibit 3)

Due process requires, at minimum, notice and an opportunity to be heard before a litigant is finally deprived of a protected interest. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (cleaned up); see also Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Grannis v. Ordean, 234 U.S. 385, 394 (1914); González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011).

No status conference was held when Judge McAuliffe assumed the case. No scheduling order was entered. No opportunity for Plaintiff to present his position on the pending motions was afforded. A reasonable observer would question whether these omissions reflect impartiality or a predetermined disposition.

**B. NH Judge McAuliffe's Own Order Was Not Honored by McAuliffe**

On April 17, 2026, the Court reinstated the case and gave Plaintiff until May 29, 2026, to elect one of three options. See Exhibit 6. Yet on May 29, 2026—the very date Plaintiff's election was due—the Court denied Plaintiff's Motion for Clarification and simultaneously ordered summary-judgment briefing with a July 1, 2026 deadline. In practical effect, the Court made the decision for me, the Plaintiff. By doing so, the Court treated Plaintiff as proceeding pro se and immediately placed him on a summary-judgment track, without first resolving his request for clarification, his continuing efforts to obtain counsel, or the serious record-based allegations of misconduct and misrepresentation by the University of Rhode Island and Steven Richard of Nixon Peabody. This sequence raises a substantial due-process concern and creates the appearance that the case is being accelerated toward dispositive judgment in favor of URI and Nixon Peabody without a meaningful hearing on the threshold issues Plaintiff has repeatedly placed before the Court. **Summary judgment is premature at this stage because the record presents numerous genuine disputes of material fact, including disputes concerning falsity, retaliation, procedural irregularities, and alleged misrepresentations to the Court**.

This is not merely an adverse ruling; it is a structural denial of the procedural fairness the Court itself established and a further **constructive denial of due process**. When a court issues an order giving a party options and a deadline to

respond, fundamental fairness requires that the party be afforded the meaningful opportunity the order itself guaranteed. Due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Armstrong v. Manzo, 380 U.S. 545, 552 (1965). The Supreme Court has further recognized that "an essential principle of due process" is that a deprivation of life, liberty, or property be preceded by notice and an opportunity for hearing appropriate to the nature of the case. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

### C. Simultaneous Deadlines in Two Separate Cases

On May 11, 2026, the Court set a May 29, 2026 deadline in Plaintiff's second case against Nixon Peabody (Case No. 1:25-cv-00691). (Exhibit 10) This created simultaneous deadlines in two complex federal cases for a pro se litigant. While any single scheduling decision might be within the Court's discretion, the cumulative effect of simultaneous deadlines, coupled with the absence of any accommodation for Plaintiff's pro se status, contributes to the appearance of an adjudicative posture designed to oppress and overwhelm a stigmatized litigant for his forceful advocacy for constitutional rights, rather than to facilitate a fair hearing.

Because I am a pro se litigant in a complex civil-rights action against oppressive institutional defendants represented by highly experienced Nixon Peabody counsel, the Court was required to construe my filings liberally and avoid treating technical

ambiguity as abandonment of my claims. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).

**D. IFP Motion Unresolved While Substantive Deadlines Imposed**

Plaintiff filed a motion to proceed in forma pauperis on April 10, 2026, which remains unresolved. Plaintiff requires IFP status in order to obtain transcripts necessary for his First Circuit appeal in one case and very Summary Judgement prematurely ordered in another case. Despite this pending motion, the Court has imposed summary judgment deadlines. A reasonable observer could conclude that imposing merits deadlines while Plaintiff's in forma pauperis motion and related transcript-access issues remain unresolved creates an unfair structural disadvantage for a pro se litigant facing institutional defendants represented by experienced counsel.

**E. Pattern of Misapprehending Plaintiff's Motions**

I view this court with mistrust and suspicion, because this Court has repeatedly misconstrued Plaintiff's motions in a manner contrary to their stated intent. Plaintiff's Motion to Withdraw as a Pro Se Litigant was interpreted as a motion to dismiss his claims, when the motion itself stated that Plaintiff wished to withdraw from pro se status in order to secure counsel. (Exhibit 6) Plaintiff's Motion for Clarification was denied and converted into a vehicle for imposing summary judgment deadlines (May 29, 2026 Order).

While a single instance of judicial misapprehension might be understandable, a repeated pattern of construing a pro se plaintiff's filings in the manner most adverse to his interests raises serious concerns under 28 U.S.C. § 455(a), particularly where the result is to move the case toward dismissal or dispositive judgment without meaningful engagement with the plaintiff's record evidence. Pro se filings must be liberally construed and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Hughes v. Rowe, 449 U.S. 5, 9 (1980). When repeated adverse constructions of pro se filings are combined with surrounding circumstances suggesting that fair judgment may be compromised, the appearance-of-impartiality standard is implicated. See Liteky v. United States, 510 U.S. 540, 555 (1994).

### F. No Hearing on Fraud and Misrepresentation Allegations

Throughout this litigation, Plaintiff has raised detailed, documented allegations of fraud upon the court, misrepresentation of fact, and professional misconduct by Nixon Peabody attorney Steven Richard. These allegations are supported by exhibits, including internal university documents, communications, and court filings. This Court has not held a hearing on any of these allegations. No evidentiary hearing has been scheduled. No oral argument has been permitted. The First Circuit has recognized that district courts have discretion to hold hearings, but that discretion must be exercised in a manner consistent with

16

fairness. Where serious allegations of attorney misconduct have been raised, the failure to conduct any inquiry into those allegations, combined with a pattern of rulings that consistently favor the accused party, contributes to an appearance of partiality.

### G. Justice Must Satisfy the Appearance of Justice

The Supreme Court has repeatedly emphasized that the appearance of impartiality is essential to the legitimacy of judicial proceedings. "Justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14 (1954). Likewise, "a fair trial in a fair tribunal is a basic requirement of due process," and the law must guard against circumstances creating a probability of unfairness. In re Murchison, 349 U.S. 133, 136 (1955). Accordingly, even where actual bias is denied, recusal is required when the circumstances would cause a reasonable observer to question impartiality under 28 U.S.C. § 455(a), or when the probability of bias becomes constitutionally intolerable under the Due Process Clause.

**Here, a reasonable observer, fully informed of the facts, would perceive**:

(i) A case closed without notice or hearing;

(ii) Motions denied without analysis or oral argument;

(iii) Plaintiff's stated intent consistently misapprehended in the manner most adverse to his interests;

(iv) Simultaneous deadlines imposed in two cases against a pro se litigant;

(v) A pending IFP motion ignored while merits deadlines proceed;

(vi) Allegations of attorney fraud never examined, even though primary evidence is repeatedly provided;

(vii) A case moving toward summary judgment without any sort of proper hearing at any stage.

**That observer would harbor significant doubt about this Court's impartiality.**

### H. The Broader Procedural Context Reinforces the Appearance of Bias

Plaintiff does not argue that adverse rulings alone require recusal. Plaintiff recognizes the extrajudicial-source doctrine discussed in Liteky v. United States, 510 U.S. 540 (1994). However, Liteky itself makes clear that recusal may be warranted even absent an extrajudicial source where judicial rulings, comments, or conduct reveal "such deep-seated favoritism or antagonism as would make fair judgment impossible." Id. at 555.

The broader context here includes: the recusal of Chief Judge McConnell after Plaintiff documented concerns about bias; the subsequent mass recusal of the entire Rhode Island federal bench; the assignment of this case to a judge sitting by designation from another district; and a pattern of rulings since reassignment that

has consistently advantaged Defendants and disadvantaged Plaintiff. A reasonable observer would view this totality of circumstances with concern.

### I. Chief Judge McConnell's Continued Exercise of Authority After Recusal Creates a Sordid Appearance of Retaliatory Case Manipulation

Perhaps the most troubling procedural feature of this case is that Chief Judge John McConnell continued to exercise judicial authority over case assignment and referral after his own recusal, and orchestrated a mass recusal of the entire Rhode Island federal bench, creating circumstances that constructively deny Plaintiff equal access to the courts. **See Exhibit 2**

### 1. A Recused Judge Lacks Jurisdiction to Take Further Action

It is a well-established principle that once a judge has recused or been disqualified, that judge lacks jurisdiction to enter further orders or take further action in the case. If a judge is disqualified under the constitution, he or she is absolutely without jurisdiction in the case, and any judgment rendered by him or her is void, without effect, and subject to collateral attack.

The principle is straightforward: recusal means complete withdrawal. A judge who has recused because his impartiality might reasonably be questioned under 28

U.S.C. § 455(a) cannot then exercise the very authority, selecting the replacement judge and directing where the case will be heard, that most directly determines the trajectory and outcome of the case.

**2. The Factual Record**

The record here is unambiguous. On October 10, 2025, Chief Judge McConnell recused himself from Plaintiff's underlying URI litigation (Case No. 21-cv-279) after Plaintiff filed a detailed sworn affidavit documenting McConnell's personal bias and serious conflicts of interest, and other alleged fraud in court. (Exhibit 1; Exhibit 2) After Judge McConnell was recused, the case (Case No. 1:25-cv-00691) was assigned to Judge Mary McElroy. Subsequently, for reasons unknown to Plaintiff, circumstances arose that Plaintiff characterizes as a silent protest by the federal bench in support of Judge John McConnell and in response to Plaintiff's investigation that resulted in Judge McConnell's recusal. Thereafter, every judge on the Rhode Island federal bench recused from the matter.

Subsequently, on December 30, 2025, Plaintiff filed a separate lawsuit against Nixon Peabody and Steven Richard (Case No. 1:25-cv-00691). That case was originally assigned to Judge Melissa DuBose, the only Black judge on the Rhode Island federal bench.

20

On February 12, 2026, all five judges on the Rhode Island federal bench, including Judge DuBose, Chief Judge McConnell, Judge McElroy, Judge Sullivan, and Judge Moses, recused from the Nixon Peabody case on the same day, in a coordinated action. None of these judges provided any explanation for their recusal. (Exhibit, Recusal Orders, Documents 6-10, filed February 12, 2026)

On February 19, 2026, Chief Judge McConnell, despite having already recused, signed an order referring the case to the District of New Hampshire for assignment to a judge in that district, sitting by designation. (Exhibit, Referral Order, Document 11, filed February 19, 2026) The Concurring Order required the Chief Judge of the assignee district to concur, but the referral decision itself was made by Chief Judge McConnell.

### 3. The Legal Problem: Post-Recusal Exercise of Authority

The question is whether a Chief Judge who has recused from a case, on the same grounds that required his recusal from a related case, may then exercise the critically important power of selecting the court and the judge to whom the case will be referred. The answer, under governing law, is no.

Under 28 U.S.C. § 455(a), disqualification is required where a judge's "impartiality might reasonably be questioned." The purpose of recusal is to remove the disqualified judge from all participation in the case, not merely from ruling on the

merits. When a recused Chief Judge directs the reassignment of a case to a specific district, he exercises a form of influence over the case that is arguably more consequential than any single ruling, because the choice of judge shapes the entire course of litigation.

As the Supreme Court has recognized, "a fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). The selection of the tribunal is the most fundamental aspect of that guarantee. If a judge's impartiality has been reasonably questioned, his selection of the replacement judge must also be reasonably questioned. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009) (due process violated where "extreme facts" create "probability of bias").

**4. The Mass Recusal Without Explanation Creates an Appearance of Institutional Retaliation**

The simultaneous recusal of every judge on the Rhode Island federal bench, on the same day, without explanation, in a case where Plaintiff had no prior personal or legal encounter with any of those judges, raises a profound appearance-of-justice concern.

Plaintiff has never appeared before Judge DuBose, Judge McElroy, Judge Sullivan, or Judge Moses. **No factual basis for their recusal has been articulated—all Plaintiff's inquiries about the recusal have been met with silence.** The only apparent connection is that Plaintiff investigated and successfully obtained the recusal of their Chief Judge in the related URI litigation.

A reasonable, fully informed observer would perceive this mass recusal as either: (a) an act of institutional solidarity with Chief Judge McConnell, designed to express disapproval of Plaintiff's exercise of his statutory right to seek recusal; or (b) an acknowledgment that the entire bench shares the conflicts that disqualified McConnell, in which case McConnell should not have been directing case assignment.

Either interpretation is deeply problematic. The first would mean that the exercise of a statutory right under § 455 has been punished by institutional exclusion, depriving Plaintiff of access to any judge in the district where venue is proper. The second would mean that a conflicted bench orchestrated its own replacement. Litigants can move for trial judges to recuse themselves on grounds of partiality or the appearance of partiality. Improper denial of these motions can deprive citizens of their right to a "neutral and detached judge," and diminish public trust in the judicial system. By extension, retaliatory or punitive recusals that are designed to

23

stigmatize a litigant who exercised his right to seek recusal are equally destructive of public trust.

**5. The Stigmatizing Effect on Plaintiff's Ability to Secure Counsel and a Fair Hearing**

The mass recusal has had tangible, concrete consequences for Plaintiff's ability to litigate this case. Every attorney Plaintiff has contacted has been made aware that the entire Rhode Island federal bench has recused. This extraordinary and unprecedented fact communicates to prospective counsel that Plaintiff is a litigant who has been effectively blacklisted by the judiciary. The chilling effect on Plaintiff's ability to retain counsel is direct and demonstrable.

Moreover, the referral to New Hampshire, orchestrated by the very judge whose bias was documented, resulted in assignment to Judge McAuliffe, who has demonstrated the same pattern of conduct Plaintiff experienced under McConnell: no hearings, no status conferences, case closure without notice, and motions consistently misapprehended in the manner most adverse to Plaintiff's interests.

**6. The Appearance of a Predetermined Outcome**

When a recused Chief Judge selects the replacement judge, and the replacement judge then proceeds to close the case without a hearing, deny all motions without

analysis, impose simultaneous deadlines, and order summary judgment while threshold motions remain unresolved, a reasonable observer would perceive not independent adjudication but continuity of purpose. The appearance is that the recusal changed the nameplate on the bench without changing the trajectory of the case.

The Supreme Court has warned that "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). Here, the appearance is one of a recused judge who maintained control over the case through his selection of a successor who has implemented the same adjudicative posture.

## VI. REQUEST FOR RELIEF

Plaintiff respectfully requests that:

**1) Judge Steven J. McAuliffe recuse and disqualify himself** from this case under 28 U.S.C. §§ 144 and 455;

**2) This case be reassigned** to a judge outside the District of Rhode Island and the District of New Hampshire, or, in the alternative, that the First Circuit designate and assign a judge from another circuit to preside, a judge who recognizes that our jobs are our dignity and we should not be punished and sacked for speaking pristine truth corroborated by primary evidence;

**3) The Court appoint counsel for Plaintiff** pursuant to 28 U.S.C. § 1915(e)(1), which provides that a court "may request an attorney to represent any person unable to afford counsel," given that:

(a) Plaintiff has been unable to retain counsel despite contacting over fifty attorneys;

(b) the complexity of this case, which involves two active federal lawsuits, fraud-on-the-court allegations, and constitutional claims, exceeds the capacity of a pro se litigant to manage effectively;

(c) the structural power imbalance between Plaintiff and Defendants, who are represented by a major white-shoe law firm, creates a fundamental unfairness that undermines confidence in the proceedings; and

(d) This case has already survived Defendants' attempt to dismiss core claims. On March 14, 2022, the Court sustained Counts III, V, and VII against dismissal, allowing Plaintiff's Equal Protection, Defamation, and Rhode Island Whistleblower claims to proceed. That ruling matters. It confirms that Plaintiff's claims were legally substantial enough to move forward. Yet after Plaintiff declined settlement and continued presenting record evidence of misconduct by URI and its counsel, the procedural posture of the court changed dramatically and became more punitive. A reasonable observer could question whether Plaintiff's claims are being adjudicated on their merits or managed toward dismissal without meaningful engagement with the evidence.

**4) All pending deadlines be stayed** until the recusal motion is resolved and, if recusal is granted, until a new presiding judge has been designated and has had an opportunity to review the record;

**5) The Court rule on Plaintiff's pending IFP motion** (filed April 10, 2026) so that Plaintiff may obtain the transcripts necessary for his First Circuit appeal; and

**6) The Court declare that Chief Judge McConnell's post-recusal referral order (dated February 19, 2026) was improper**, on the ground that a recused judge lacks authority to direct case assignment, and that the referral should have been handled by the Circuit under 28 U.S.C. § 292 or by the Clerk's Office through the standard random assignment process, without the participation of a judge who had been disqualified from the case;

**7) The Court grant such other and further relief** as justice requires.


## VII. CONCLUSION


James Madison, Thomas Jefferson, Alexander Hamilton, and George Mason, the Framers of the U.S. Constitution understood that liberty could not survive in America without an **independent judiciary** committed to **due process** and **equal justice under law**. The Constitution was designed not merely to protect the powerful, but to safeguard the rights of those with the least political influence—the dissenter, the outsider, the unpopular litigant, and members of minority communities whose rights might otherwise be overwhelmed by majoritarian power.

**I am that pristine dissenter. I am that outsider** whose dignity must be preserved and respected in a court of law. Baruch HaShem

The Due Process Clause demands not only the absence of actual bias but also the appearance of impartiality. *In re Murchison*, 349 U.S. 133, 136 (1955). The cumulative pattern of this Court's procedural conduct, viewed objectively, has undermined confidence in the fairness of these proceedings. Plaintiff does not seek to remove this judge because of adverse rulings. Plaintiff seeks recusal because the totality of circumstances, including the closure of his case without notice, the systematic misapprehension of his motions, the imposition of simultaneous deadlines, the failure to resolve threshold motions, and the refusal to examine documented allegations of attorney fraud, creates an appearance of partiality that a reasonable observer would find disqualifying.

Recusal is necessary to restore public confidence in the integrity of these proceedings and to ensure Plaintiff's constitutional right to a fair tribunal.

Respectfully submitted on Juneteenth, June 19, 2026

Louis Kwame Fosu
Plaintiff, Pro Se
Loufosu@diversitythinktank.org

28

**EXHIBIT LIST**

**Exhibit        Description**

1 Motion for Recusal and Disqualification of Chief Judge McConnell (Oct. 8, 2025)

2 Court orders documenting recusal of McConnell and entire RI bench (Oct. 10-16, 2025)

3 Order closing case without notice or hearing (Jan. 27, 2026)

4 Louis Fosu's Motion to Alter or Amend Judgment (Feb. 20, 2026)

5 Plaintiff's Reply to Defendants' Opposition (Mar. 5, 2026)

6 Order granting in part Motion to Alter/Amend; reinstating case (Apr. 17, 2026)

7 Email inquiry to RI Federal Court regarding First Circuit letter (Apr. 26, 2026)

8 Prepared First Circuit Transcript Request form as instructed by McAuliffe order

9 Prepared the District Court Transcript Request Form to ensure I completed all possible requirements

10 Court order setting May 29, 2026 deadline in Nixon Peabody case (May 11, 2026)

11 Fosu Motion for Clarification (May 21, 2026)

12 Fosu Status Report to First Circuit (May 22, 2026)

13 Fosu Objection to Nixon Peabody Motion to Dismiss (June 12, 2026)

14 Fosu Motion for Leave to File Sur-Reply (June 16, 2026)

15 Criminal Referral of Nixon Peabody to the DOJ and Request for Federal Investigation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2026, I served the foregoing Objection to Nixon

Peabody's Motion to Dismiss upon the following counsel of record via the RI Court

Intake Clerk who then posts my case to the Court's CM/ECF system, and by email

to all defendants.


Steven Richard

srichard@nixonpeabody.com

Nixon Peabody LLP

One Citizens Plaza,
Suite 500
Providence, RI 02903
Tel: (401) 454-1042


Louis Kwame Fosu
Plaintiff, Pro Se
Loufosu@diversitythinktank.org

## <u>DECLARATION OF LOUIS KWAME FOSU PURSUANT TO 28 U.S.C. § 1746</u>

I, Louis Kwame Fosu, <u>a free man in the United States of America</u>, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing facts are true and correct to the best of my knowledge, information, and belief.

**Executed on Juneteenth (June 19, 2026), at Cranston, Rhode Island.**



Louis Kwame Fosu

Plaintiff, Pro Se

Loufosu@diversitythinktank.org